J^LEON A. CANNIZZARO, JR., Judge.
The claims of Kathleen Ducote, and her husband, Norman Ducote (the “Ducotes”) against the defendant, Touro Infirmary (“Touro”) were dismissed by the trial court on the grounds of prescription. The Du-cotes are now appealing the dismissal.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
The Ducotes filed this action on December 29, 1998. In their petition, they alleged that Mrs. Ducote was diagnosed as being infected with the hepatitis C virus (“HCV”) on January 23, 1998. The Du-cotes also alleged that Mrs. Ducote was infected with HCV as a result of a transfusion of blood or blood products tainted with HCV that she received at Touro when she was hospitalized for childbirth in 1972.
In 1992, Mrs. Ducote donated blood at a blood drive being held at her place of employment. Shortly after she donated blood, she received a letter from the blood bank. Mrs. Ducote testified in her deposition that the letter stated that “I had [ 3the Hepatitis C; and I couldn’t donate blood anymore; and for me to seek my own physician.”
Mrs. Ducote further testified in her deposition that after receiving the letter from the blood bank, she visited her physician at the time, a Dr. Fontenelle, who is now deceased. She testified that Dr. Fonte-nelle “drew the blood; and he told me that I did have it; and there was nothing to worry about.” Dr. Fontenelle also told her that if she started “feeling bad”, she should “come in and have tests every now and then.” Although Dr. Fontenelle confirmed that Mrs. Ducote was infected with HCV, she did not realize at that time the seriousness of the infection.
Several years later Mrs. Ducote began to experience fatigue, lightheadedness, and blackouts. Because of these symptoms she went to see Dr. Nancy Michaelis, who ordered blood tests for Mrs. Ducote. When she received the results of those tests, Dr. Michaelis advised Mrs. Ducote that she was infected with HCV and referred her to a specialist, Dr. Louis Mau-mus. In January or February of 1998, Dr. Maumus ordered a liver biopsy to evaluate the status of Mrs. Ducote’s liver, and he prescribed a treatment regimen. Dr. Maumus also told Mrs. Ducote that she must have contracted the HCV infection from the transfusion of blood or blood products that she received from Touro in 1972. He reached this conclusion after questioning Mrs. Ducote about the various risk factors for acquiring HCV and finding that the only risk factor applicable to her was receiving a transfusion of blood or blood products when her son was born.
laThe treatment regimen prescribed by Dr. Maumus was very debilitating, and Mrs. Ducote was placed on short-term disability leave from her job. Also, because of her illness, Mrs. Ducote is no longer able to participate in many of the activities she previously enjoyed.
After Dr. Maumus explained to Mrs. Ducote the implications of being infected with HCV, she and her husband subsequently filed the instant suit. Suit was filed within one year from the time Mrs. Ducote realized what those implications were.
Touro filed an exception of prescription in this case claiming that the one year prescriptive period for any action against *128 Touro had run. Touro contended that the prescriptive period ran from the time Mrs. Ducote received the letter from the blood bank advising her that she was infected with HCV. The Ducotes, however, contended that prescription began to run only after Mrs. Ducote’s HCV infection became symptomatic and her physicians explained to her in 1998 the meaning of her diagnosis.
STANDARD OF REVIEW
The instant case involves both questions of fact and questions of law. We must review the factual issues to determine whether the findings of fact by the trial court were clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). With respect to the issues of law, however, this Court must determine whether the trial court applied the law appropriately. Glass v. Alton Ochsner Medical Foundation, 2002-0412 (La.App. 4 Cir. 11/6/02), 832 So.2d 403. In K.K.D. Smith v. Cutter Biological, 99-2068, p. 13 (La.App. 4 Cir. 9/6/00), 770 So.2d 392, 400-01, after determining that the issue of prescription raises questions of both fact and law, this Court stated that “[t]he trial judge’s factual findings concerning prescription should not be reversed by this Court in the absence of manifest error.” Therefore, this Court should determine whether, considering all of the evidence, the trial court judgment is clearly wrong or manifestly erroneous.
APPLICABLE LAW
Prescriptive Period
In Williams v. Jackson Parish Hospital, 2000-3170 (La.10/16/01), 798 So.2d 921, the Louisiana Supreme Court considered the prescriptive periods applicable to claims arising out of tainted blood transfusions. The Supreme Court stated that “all pre-1982 (pre-blood shield statutes) claims against hospitals in strict products liability arising out of defective blood transfusions ... are not traditional medical malpractice claims and thus are not governed by § 5628[1], but rather are governed by Article 3492.” 2000-3170, p. 15-16; 798 So.2d at 932 (footnote added).
Because the blood transfusion in the instant case is alleged to have occurred in 1972, La. Civil Code art. 3492 is applicable in the instant case. Article 3492 provides, in relevant part, that “[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.
| r,Contra Non Valentem
In certain situations the jurisprudential doctrine of contra non valentem agere nulla currit praescriptio, which means that prescription does not ran against a plaintiff who could not bring suit, operates to interrupt the running of prescription. Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (1970). See also Corsey v. State, Through Department of Corrections, 375 So.2d 1319 (La.1979).
In Renfroe v. State, Through Department of Transportation and Development, 2001-1646 (La.2/26/02), 809 So.2d 947, the Louisiana Supreme Court discussed this doctrine as follows:
This Court has recognized four factual situations in which the doctrine of cow- *129 tra non valentem applies so as to prevent the running of liberative prescription:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action;
(2) where there was some condition coupled with
the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
(4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiffs ignorance is not induced by the defendant.
2001-1646, p. 9; 809 So.2d at 953. The fourth application of contra non valentem is relevant in the instant case.
The Louisiana Supreme Court has stated that “[t]he doctrine [of contra non va-lentem] itself is based on the theory that when the claimant is not aware of the facts giving rise to his or her cause of action against the particular defendant, the running of prescription is for that reason suspended until the tort victim discovers |fior should have discovered the facts upon which his or her cause of action is based.” In re Medical Review Panel of Howard, 573 So.2d 472, 474 (La.1991). The Supreme has also recognized that “[i]t is often difficult to identify a precise point in time at which the claimant becomes aware of sufficient facts to begin the running of prescription.” Id. See also Cole v. Celotex Corp., 620 So.2d 1154 (La.1993).
In Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502, the Supreme Court stated that “[prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.” 2001-2707, p. 11-12, 828 So.2d at 510. Prescription will run if the plaintiff has constructive knowledge of the facts that would entitle the plaintiff to bring suit, even if the plaintiff does not have actual knowledge of those facts. The Supreme Court has defined “constructive knowledge” to mean “whatever notice is enough to excite attention and put the injured party on guard and call for inquiry.” Additionally, the notice is tantamount to knowledge of everything to which the inquiry might lead. 2001-2707, p. 12; 828 So.2d at 510-11. Information or knowledge “as ought to reasonably put the alleged victim on inquiry is sufficient to start the running of prescription.” 2001-2707, p. 12; 828 So.2d at 511. Mere apprehension that something might be wrong, however, is insufficient to begin the running of prescription unless “the plaintiff knew or should have known through the exercise of reasonable diligence” that the injury suffered may have been caused by certain acts. Id.
In Renfroe v. State, Through Department of Transportation and Development, 2001-1646, p. 10 (La.2/26/02), 809 So.2d 947, 953, the Supreme Court stated that the plaintiff in an action will be deemed to know what could have |7been learned through reasonable diligence. Additionally, even though the plaintiff may be ignorant of, or misunderstand, the extent or duration of his or her injuries, the plaintiff may still have the requisite knowledge to commence prescription. See Fontenot v. ABC Insurance Co., 95-1707, p. 8 (La.6/7/96), 674 So.2d 960, 964, where the Supreme Court stated that “[i]gnorance or misunderstanding of the probable extent or duration of injuries materially differs *130 from ignorance of actionable harm which delays commencement of prescription.
DISCUSSION
If Mrs. Ducote received tainted blood products from Touro during her hospitalization for her son’s birth, her injury was sustained in 1972. The issue before this Court is whether the trial court was clearly wrong or her decision was manifestly erroneous when she determined that Mrs. Ducote’s damages manifested themselves when Mrs. Ducote received the letter from the blood bank advising her that she was infected with HCV. It is clear that the doctrine of contra non valentón is applicable in the instant case, but we must determine whether prescription began to run from the date Mrs. Ducote received the letter from the blood bank or whether prescription began to run only after she developed symptoms of the disease.
The central inquiry in this case is when did Mrs. Ducote receive knowledge that she had received tainted blood products that had caused damage to her. There is no evidence that Mrs. Ducote knew of her infection with HCV for the approximately twenty years between the time she allegedly received blood or blood products from Touro and the time she received the letter from the blood bank advising her that she had been infected with HCV. Therefore, the doctrine of contra non valentón prevented prescription from running during that time period.
IsWhen Mrs. Ducote received a letter from a blood bank advising her that she was infected with HCV, that her blood could never be donated to another individual, and that she should see her physician, she visited her physician, Dr. Fontenelle, who, apparently, gave her a false sense of security. While ignorance of actionable harm delays prescription, ignorance or misunderstanding of the probable consequences of such harm does not. In the instant case, Mrs. Ducote had notice of the actionable harm, the HCV infection, when she received the letter from the blood bank, although she may have been misled regarding the consequences of the infection by Dr. Fontenelle’s statements to her.
Mrs. Ducote was deemed to know what she could have learned from reasonable diligence in investigating the HCV infection she had contracted. The letter from the blood bank was notice that was tantamount to knowledge of everything to which her inquiry might lead. Therefore, it was incumbent upon Mrs. Ducote to ask Dr. Fontenelle what HCV was, how she might have contracted it, and what were the health implications of being infected. Even if Dr. Fontenelle dismissed the letter from the blood bank as a routine form letter, the fact that the blood bank had advised Mrs. Ducote that she should never donate blood again should have alerted her to ask more probing questions than those that she testified that she did ask.
Blood banks actively seek donations from as many healthy donors as are willing to donate blood. Therefore, a letter from a blood bank stating that Mrs. Ducote should never donate blood again should have aroused sufficient suspicion in her mind to have caused her to probe much deeper into the meaning of this admonition than she did, even if it meant getting a second opinion to determine whether Dr. Fontenelle’s lack of concern regarding Mrs. Ducote’s condition was | ^justified. An average, reasonable person is aware of blood borne infections, in part due to the widespread educational campaigns regarding the prevention of AIDS, and a letter advising such a person that his or her blood should never be donated again is sufficient to command that person’s attention. We find that the average, reasonable person would have pursued the matter of *131 an HCV infection much further than did Mrs. Ducote.
For the reasons discussed above, ■ we conclude that the trial court’s finding that Mrs. Ducote had notice sufficient to begin the running of prescription when she received the letter from the blood bank in 1992 was neither clearly wrong nor manifestly erroneous. Prescription began to run in this case in 1992, and the case had prescribed when it was filed in 1998.
CONCLUSION
Based on the foregoing discussion, we affirm the trial court’s judgment granting Touro’s exception of prescription. This case is dismissed with prejudice.
AFFIRMED.

. La. R.S. 9:5628 provides, in relevant part, that medical malpractice claims shall be brought "within one year from the date the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.”