945 So.2d 814 (2006)
In re Charles J. JENKINS Applying for Medical Panel Review.
No. 2006-CA-0566.
Court of Appeal of Louisiana, Fourth Circuit.
November 15, 2006.
*815 Charles J. Jenkins, New Roads, LA, in proper person, Appellant.
Dwight C. Paulsen, III, Bradley R. Belsome, Lemle & Kelleher, L.L.P., New Orleans, LA, for Appellee.
Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge ROLAND L. BELSOME.
ROLAND L. BELSOME, Judge.
This appeal arises out of a medical malpractice action. The Appellant, Charles J. Jenkins ("Mr. Jenkins"), in proper person, appeals the trial court's granting of a peremptory exception of prescription in favor of the Appellee, Pendleton Memorial Methodist Hospital ("PMMH"). We affirm.
*816 STATEMENT OF FACTS AND PROCEDURAL HISTORY:
On April 24, 2002, Mr. Jenkins filed a proposed complaint of medical malpractice with the Louisiana Patients' Compensation Fund ("LPCF") against PMMH seeking a review by a Medical Review Panel. The basis of Mr. Jenkins' action is the wrongful conduct of PMMH employees with respect to their treatment of Mr. Jenkins from March 31, 2000 to April 7, 2000.
PMMH filed a peremptory exception of prescription asserting that Mr. Jenkins' action was filed more than two years after the alleged wrongful conduct and thus clearly outside the one-year prescriptive period provided by La. R.S. 9:5628(A). The trial court granted PMMH's exception of prescription on April 5, 2005. This timely devolutive appeal followed. On appeal, Mr. Jenkins asserts that the trial court erred in granting the exception of prescription because the trial court failed to consider the doctrines of contra non valentem and continuing tort.
STANDARD OF REVIEW:
In its analysis of a judgment granting an exception of prescription, an appellate court will review the entire record to determine whether the trial court's finding of fact was manifestly erroneous. Katz v. Allstate Insurance Co., XXXX-XXXX, p. 2 (La.App. 4 Cir. 2/2/05), 917 So.2d 443, 444, writ denied, XXXX-XXXX (La.4/29/05), 901 So.2d 1069.
DISCUSSION:
Generally, the party pleading prescription bears the burden of proving the claim has prescribed. Pratt v. Louisiana State University Medical Center in Shreveport, 40,476, p. 4 (La.App. 2 Cir. 1/27/06), 921 So.2d 213, 216. When a claim has prescribed on its face, however, the burden shifts to the claimant to demonstrate that prescription was either suspended or interrupted. In re Medical Review Panel for Claim of Moses, 2000-2643, p. 6 (La.5/25/01), 788 So.2d 1173, 1177.
Under the provisions of La. R.S. 9:5628(A), a medical malpractice action must be filed within one year of the alleged act, omission, or neglect, or within one year from the date of the discovery of the alleged act, omission, or neglect, but in all events, no later than three years from the date of the alleged act, omission, or neglect. In the present case, the trial court, in granting the exception of prescription in favor of PMMH, determined that Mr. Jenkins did not file his action within one year of the alleged wrongful conduct. The trial court also held that Mr. Jenkins failed to allege any facts in support of a later discovery date.
In connection with his medical malpractice complaint, Mr. Jenkins submitted a thirteen-page detailed narrative of the alleged disparate treatment provided by PMMH. We summarize Mr. Jenkins' grievances as follows:
On March 31, 2000, Mr. Jenkins arrived at PMMH for a pre-admit examination in connection with a surgical procedure known as a spermatocelectomy,[1] which was scheduled for April 6, 2000. During the examination, Mr. Jenkins relates a situation where the lab technician had difficulty drawing blood from his arm due to an alleged "manufacturer defect" in one of the blood collecting tubes. Mr. Jenkins was very alarmed by the incident and claimed to have soreness in his arm; however, Mr. Jenkins alleges no complications or follow-up treatment as a result of this incident.
On April 3, 2000, Mr. Jenkins returned to PMMH to pay his insurance deductible. *817 Also on this date, Mr. Jenkins requested that he be allowed to file a formal complaint in connection with the incident of March 31, 2000. Mr. Jenkins described the complaint process in his narrative as a "marathon waiting session" and ultimately chose not to stay and complete the process.
On April 6, 2000, Mr. Jenkins was admitted into PMMH, and the surgical procedure was performed. Until his discharge the next afternoon, Mr. Jenkins' narrative recounts numerous incidences of how he was allegedly harassed and/or ignored by the hospital staff.[2]
On April 7, 2000, in preparation for his discharge from the hospital, an I-V needle was removed from Mr. Jenkins' right hand. At that time, a loss of blood occurred, and a hematoma[3] formed at the site where the needle was removed. Mr. Jenkins was assured that the hematoma was not abnormal, and he was released shortly thereafter. Mr. Jenkins does not allege that he suffered any complications or that he required any further treatment as a result of this incident. Mr. Jenkins' malpractice action was filed over two years later.
In its exception of prescription, PMMH contends that the medical malpractice action is prescribed on its face and that Mr. Jenkins has not met his burden to show that prescription was either suspended or interrupted. We agree.
It is clear from the record that the final act of alleged wrongful conduct, which occurred on April 7, 2000 (when the I-V catheter was removed), was immediately apparent to Mr. Jenkins; Mr. Jenkins' own written narrative describes the incident in graphic detail. Accordingly, prescription began to accrue on April 7, 2000. Mr. Jenkins argues, however, that prescription was interrupted pursuant to the doctrine of contra non valentem, based solely on the fact that the PMMH nurse apparently failed to record the I-V incident in the hospital's medical records. Mr. Jenkins maintains he was not aware that the incident had been concealed until March 28, 2002, the date that he received a copy of his medical records. He therefore argues that the one-year prescriptive period began to run from March 28, 2002, the date he discovered the alleged concealment. We note that Mr. Jenkins does not allege that he was unaware of the injury or his potential cause of action; rather, he only alleges that he was unaware that the incident was not documented in his medical records.
La. R.S. 9:5628(A) recognizes the doctrine of contra non valentem and allows the medical malpractice victim "one year from the date of discovery of the alleged act, omission, or neglect" to bring an action for damages. Accordingly, in certain situations, the jurisprudential doctrine of contra non valentem agere nulla currit praescriptio operates to interrupt the running of prescription. Corsey v. State, Through Department of Corrections, 375 So.2d 1319, 1321 (La.1979); Ducote v. Touro Infirmary, XXXX-XXXX (La.App. 4 Cir. 10/22/03), 860 So.2d 125, 128-129, writ denied, 869 So.2d 819, XXXX-XXXX (La.3/12/04).
*818 The Louisiana Supreme Court has held that "[t]he doctrine [of contra non valentem] itself is based on the theory that when the claimant is not aware of the facts giving rise to his or her cause of action against the particular defendant, the running of prescription is for that reason suspended until the tort victim discovers or should have discovered the facts upon which his or her cause of action is based." In re Medical Review Panel of Howard, 573 So.2d 472, 474 (La.1991).
The four situations where the doctrine of contra non valentem has been recognized are:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
(4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.
Renfroe v. State, Through Department of Transportation and Development, XXXX-XXXX, p. 9 (La.2/26/02), 809 So.2d 947, 953.
Mr. Jenkins argues that the third application of contra non valentem applies in this case. We find Mr. Jenkins' reliance on the doctrine of contra non valentem to be misplaced.
The record establishes through Mr. Jenkins' own narrative that he was aware of each incident that he alleges gave rise to his cause of action from the moment that the alleged incidents occurred. We therefore reject Mr. Jenkins' argument that PMMH's failure to record the I-V incident in the medical records on its face caused any delay in Mr. Jenkins' discovery of his potential cause of action for malpractice, or that it somehow prevented Mr. Jenkins from availing himself of his cause of action.
Finally, Mr. Jenkins argues that the doctrine of continuing tort should be applied. The alleged continuing tort originates from a bill dispute with PMMH, which was ultimately sent to a collection agency. Mr. Jenkins therefore argues that this bill dispute acted as a continuing tort, and further, that prescription did not begin to run until May 30, 2001, the date of the last bill. We find no merit in this argument.
Under Louisiana law, a continuing tort occurs only so long as both the tortious conduct and the damages continue. In re Medical Review Panel Proceeding of Vaidyanathan, 98-0289, p. 10 (La.App. 4 Cir. 9/23/98), 719 So.2d 604, 609, writ denied, 732 So.2d 1238, 1998-2674 (La.12/18/98)(finding that a physician's failure to include an echocardiogram report in the patient's medical records did not constitute a continuing tort or grounds for asserting contra non valentum). In the present case, Mr. Jenkins has not asserted either continuing treatment by PMMH or cumulative damage in connection with any of the alleged wrongful conduct concerning his bill dispute. Accordingly, Mr. Jenkins has failed to demonstrate a continuing tort.
CONCLUSION:
The record before us reveals that Mr. Jenkins' medical malpractice complaint is prescribed on its face, and that Mr. Jenkins has not presented any evidence that the prescriptive period was interrupted or suspended. Consequently, the trial court *819 did not err in granting the exception of prescription.
Accordingly, the judgment of the trial court is hereby affirmed.
AFFIRMED.
NOTES
[1] Spermatocelectomy involves the surgical removal of a spermatic cyst.
[2] Mr. Jenkins claims that the disparate treatment he received was the result of the complaint made in connection with the March 31, 2000 incident, together with the offensive behavior of an individual visiting him in the hospital, whose numerous offensive remarks were directed toward the female nurses.
[3] Hematoma is a semisolid mass of blood in the tissues, caused by injury, disease, or a clotting disorder.