United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 22, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))

No. 06-31001
Summary Calendar

))))))))))))))))))))))))))))

JOSEPH THOMAS BARTUCCI, JR,

Plaintiff-Appellant,

v.

MICHAEL J JACKSON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:04-CV-2977

_____

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

Before the court is an appeal by Plaintiff-Appellant Joseph Thomas Bartucci ("Bartucci") of the district court's grant of summary judgment on his claims against Defendant-Appellee Michael Jackson ("Jackson"). Because Bartucci's claims are prescribed under Louisiana law, we AFFIRM the judgment of the district court.

_____

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

## I. BACKGROUND

The allegations in this suit concern Bartucci's claim that he was imprisoned, molested, and assaulted by Jackson. According to Bartucci, on May 19, 1984, Jackson and his handlers forced Bartucci into Jackson's white limousine while in New Orleans. He was driven to California and held there for nine days, during which time he was sexually assaulted by Jackson, beaten, and drugged. Bartucci asserts that he was cut with razor blades and had steel wires shoved into his chest. He also claims that one of Jackson's handlers "bashed" Bartucci's head into some concrete. Bartucci states that he bears the scars from the assault to this day.

Bartucci claims that he repressed all memories of this occurrence until November 2003, when he saw a Court TV special on Jackson, at which time Bartucci's memories of the events returned. Bartucci filed suit against Jackson on November 1, 2004, bringing claims of sexual assault, battery, false imprisonment, and intentional infliction of emotional distress. According to Bartucci, he suffered permanent and debilitating injuries as a result of the incident, including heart and eyesight problems, scarring, and psychological trauma. Jackson filed a motion to dismiss for failure to state a claim and, alternatively, motion for summary judgment on December 29, 2005, arguing that Bartucci's claims were prescribed under Louisiana

law because they occurred twenty years ago.  Following subsequent hearings and briefing, Jackson's motion also came to include the argument that Bartucci could not create a genuine issue of material fact that Jackson was in New Orleans on the dates in question.

The district court ultimately granted summary judgment on the ground that Bartucci had no evidence that Jackson was in New Orleans on May 19, 1984.  Bartucci filed a motion to reconsider, pointing out that his sworn interrogatory responses created a fact issue on that point.  The district court denied the motion, and Bartucci now appeals to this court.  We have jurisdiction pursuant to 28 U.S.C. § 1291, as a final judgment has been entered.

## II.  DISCUSSION

A.  Standard of Review

We review a district court's order granting summary judgment de novo.  Morris v. Equifax Info. Servs., L.L.C., 457 F.3d 460, 464 (5th Cir. 2006).  Summary judgment is appropriate when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Bulko v. Morgan Stanley DW, Inc., 450 F.3d 622, 624 (5th Cir. 2006).  A genuine issue of material fact exists when the

3

evidence is such that a reasonable jury could return a verdict for the non-movant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In considering a summary judgment motion, all facts and evidence must be taken in the light most favorable to the non-movant.  <u>United Fire & Cas. Co. v. Hixson Bros., Inc.</u>, 453 F.3d 283, 285 (5th Cir. 2006).

B.    <u>Jackson's Presence in New Orleans</u>

On appeal, Bartucci contends that the district court erred when it determined that Bartucci failed to create a genuine issue of material fact that Jackson was present in New Orleans at the time Bartucci claims the false imprisonment and assault occurred. We agree.

The evidence relied upon by Jackson to demonstrate that he was not in New Orleans in May 1984 consists of two affidavits. The first is from Wayne Nagin, an assistant to Jackson in May 1984, who identified a calendar listing Jackson's appointments and rehearsals in California during the time period in question. The second affidavit is from Charilette Sweeney, who remembered speaking with Jackson at a church in California on May 13, 17, and 20, 1984.

In response, Bartucci relied on his own sworn interrogatory responses, which placed Jackson in New Orleans on May 19, 1984.[1]

---

[1]  Bartucci also produced several affidavits from other individuals that the district court determined were insufficient to create a genuine issue of material fact.  We do not need to consider those affidavits on appeal, as Bartucci's interrogatory

4

Specifically, Bartucci swore that:

> Approximately May 19th and thereafter for 9 days, Michael Jackson and his handlers placed Mr. Bartucci in a white limousine in what is generally known as the central business district area of New Orleans and kept him in this white limousine for 9 days and 10 1/2 hours of total time with them.

Rule 56(c) of the Federal Rules of Civil Procedure permits the court to consider answers to interrogatories in ruling on a motion for summary judgment, so Bartucci's responses are competent summary judgment evidence.

Here, the district court discounted Bartucci's sworn responses because Bartucci did not produce any other contemporaneous evidence of the alleged incident and his allegations were "severe and extraordinary . . . ." Jackson argues that Bartucci's testimony is conclusory and self-serving and should be disregarded for that reason. However, this is not a case in which a party makes a self-serving statement about his mental state in the face of evidence to the contrary, see In re Hinsley, 201 F.3d 638, 643 (5th Cir. 2000), contradicts previously sworn testimony without explanation, see S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495-96 (5th Cir. 1996), or speculates about the intentions of others, see Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994), in which case his testimony might have been properly rejected. Instead, Bartucci provided clear, sworn testimony

responses are sufficient to create a fact issue.

5

about a specific factual issue--whether Jackson was in New Orleans on May 19, 1984.

Bartucci has, therefore, met his burden on this summary judgment issue. While his allegations may be sensational, we are not at liberty to make credibility determinations at this stage. See Bledsoe v. City of Horn Lake, 449 F.3d 650, 652-53 (5th Cir. 2006) ("When the facts are disputed, the court does not determine the credibility of the evidence and draws all justifiable inferences in favor of the nonmovant."). Consequently, the district court erred when it granted summary judgment for Jackson on this ground.

Our discussion does not end here, though, as we may affirm the grant of summary judgment on any ground raised below, even if it was not the basis for the district court's decision. Performance Autoplex II, Ltd. v. Mid-Continent Cas. Co., 322 F.3d 847, 853 (5th Cir. 2003) (per curiam). Therefore, we next consider Jackson's argument that prescription bars Bartucci's suit against him.

C.    Prescription

In his motion before the district court, Jackson argued that Bartucci's claim was prescribed, as it was more than twenty years old when Bartucci filed suit. Pursuant to Louisiana law,[2] "[d]elictual actions are subject to a liberative prescription

---

[2] The parties do not dispute that Louisiana law applies to this case.

6

period of one year," which begins to run the day the injury is sustained. LA. CIV. CODE ANN. art. 3492 (1994 & Supp. 2007). When a complaint reveals on its face that the prescriptive period has lapsed, the plaintiff bears the burden of establishing a suspension or interruption of the prescriptive period. In re Brewer, 934 So. 2d 823, 826 (La. Ct. App. 2006); Martin v. Comm-Care Corp., 859 So. 2d 217, 220 (La. Ct. App. 2003). Here, Bartucci's claim is clearly prescribed on its face; therefore, he bears the burden of establishing an exception to prescription.

Bartucci relies on his claim of repressed memories and the doctrine of *contra non valentum* to rescue his lawsuit from prescription. Louisiana courts have used the doctrine of *contra non valentum* to suspend the running of prescription when the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. In re Jenkins, 945 So. 2d 814, 818 (La. Ct. App. 2006); Watkins v. St. Martin Parish Sch. Bd., 929 So. 2d 846, 853 n.5 (La. Ct. App. 2006). The reason behind the rule is the equitable principle that prescription should be suspended when a plaintiff is effectively prevented from enforcing his rights for reasons external to his own will. Doe v. Archdiocese of New Orleans, 823 So. 2d 360, 366 (La. Ct. App. 2002). Bartucci asserts that he repressed the memories of Jackson's alleged assault for twenty years and presents the testimony of his

7

expert, Dr. L. Mulry Tetlow, who found Bartucci credible.

However, the running of prescription is not suspended indefinitely.  Rather, prescription is suspended as long as the plaintiff's ignorance of his rights is not "willful, negligent, or unreasonable."  Stevens v. Bruce, 878 So. 2d 734, 739 (La. Ct. App. 2004) (internal quotation marks omitted).  The prescriptive period begins to run on the date that the plaintiff discovers or should have discovered the facts upon which his cause of action is based.  Hughes v. Olin Corp., 856 So. 2d 222, 225 (La. Ct. App. 2003).  Stated differently, "Prescription commences when a plaintiff obtains 'actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.'"  Babineaux v. State ex rel. Dep't of Transp. & Dev., 927 So. 2d 1121, 1123 (La. Ct. App. 2005).  "An injured party has constructive notice when he or she possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry, and includes knowledge or notice of everything to which that inquiry might lead."  Id.

We now turn to Bartucci's allegations in this case. Assuming his claims are true, Bartucci was an adult at the time of the alleged incident.  He emerged from Jackson's limousine on May 27, 1984, with cuts from razor blades and wounds from having steel wires shoved into his chest--injuries serious enough to leave scars to this day.  He also had his head slammed into concrete

8

with sufficient force so as to cause eye problems.  Further, he was missing nine days of his life.  These facts would certainly put a reasonable person on notice that he had been the victim of a tort.  At the very least, the facts are of the type that would "incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry."  Yet, there is no evidence that Bartucci took any efforts to discover what had happened to him.[3]

We have found only one case in Louisiana in which the court found a fact issue that might permit the tolling of the prescriptive period based on repressed memories.  See Doe v. Archdiocese of New Orleans, 823 So. 2d 360, 366-67 (La. Ct. App. 2002).  Doe, however, is distinguishable in that the sexual abuse of Doe occurred while he was a child, and there were no overt indicators (such as severe physical injuries or loss of time) that would have put Doe on notice earlier that he had been abused.  See id. at 362.

Consequently, Bartucci has not met his burden of showing an exception to prescription under Louisiana law.  His severe and permanent injuries, as well as his loss of nine days of memory, would have caused a reasonable person to inquire further into what happened.  Because Bartucci's failure to investigate the

---

[3]  We do not know if Bartucci could have uncovered his memories had he attempted to do so in 1984; however, his failure to even try to discover what happened to him demonstrates a lack of diligence which precludes him from establishing an exception to prescription.

alleged torts committed against him was unreasonable, the prescriptive period is not tolled, and Bartucci's claims against Jackson are barred. Therefore, we AFFIRM summary judgment for Jackson, although on different grounds than those articulated by the district court.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

AFFIRMED.