ROLAND L. BELSOME, Judge.
| plaintiff, Annie Thomas (“Ms.Thomas”), appeals the trial court’s granting of defendant’s, Medical Center of Louisiana at New Orleans (“MCLNO”), exception of prescription.
PROCEDURAL HISTORY
In April of 1999, Ms. Thomas, through counsel, requested a medical review panel be convened to review a blood transfusion given to her at MCLNO in 1987. Her complaint was amended on February 14, 2000, to allege that she was infected with the hepatitis C virus via a transfusion at MCLNO in 1973.
Ms. Thomas filed a Petition for Damages in Orleans Parish Civil District Court in 2000. On September 1, 2000, Ms. Thomas filed a Motion to Supplement and Amend Petition and First Supplemental and Amended Petition for Damages. On March 20, 2001, Ms. Thomas filed her Second Amended and Restated Petition for Damages, which alleged theories of negligence and strict liability on the part of MCLNO pertinent to Ms. Thomas’ 1973 transfusion.
LMCLNO filed an exception of prematurity based upon the fact that Ms. Thomas’ negligence claim had never been presented to medical review panel as required by the Malpractice Liability for State Services Act. Following a contradictory hearing the trial court granted the exception of prematurity. As a result, Ms. Thomas filed a Third Amended and Restated Petition, which removed all allegations of negligence. In that pleading, Ms. Thomas alleges that MCLNO is strictly liable to her for contaminated blood she received through a transfusion in 1973. The petition claims that in July 1998, Ms. Thomas “first learned” that she was infected with the hepatitis C virus. She further states that in December of 1999, her father informed her that she had received a blood transfusion at Charity Hospital in 1973. MCLNO then filed an exception of prescription, which was granted by the trial court. Ms. Thomas appeals that ruling.
LAW AND ANALYSIS
Ms. Thomas’ strict liability claim for the 1973 transfusion is governed by La. Civil Code art. 3492. La. Civil Code provides for a liberative prescription period of one year. The statute also states that “prescription commences from the day injury or damage is sustained.” La.C.C. art. 3492.
Ms. Thomas argues that she had no way of knowing of the 1973 transfusion prior to December 1999 and therefore prescription did not commence prior to that time. She contends that the doctrine of “contra non valentem”, which interrupts the running of prescription, applies.
More specifically, the doctrine prevents prescription from running against a plaintiff who could not bring suit. According to the Louisiana Supreme Court 1 ¡¡there are factual situations in which the doctrine applies: 1) where there was some legal cause which prevented the courts or their offi *190 cers from taking cognizance of or acting on the plaintiffs action; 2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; 3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of the cause of action; or 4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though the plaintiffs ignorance is not induced by the defendants. Renfroe v. State, Through Department of Transportation and Development, 2001-1646 (La.2/26/02); 809 So.2d 947.
Ms. Thomas claims that when she was diagnosed with the hepatitis C virus, her hepatologist, Dr. Robert Perrillo, based on the medical history provided by Ms. Thomas, related her diagnosis to a blood transfusion she received at Charity Hospital in 1987. Relying on that information she contacted an attorney who requested a medical panel be convened, but eventually concluded that the blood shield statutes barred her cause of action for the tainted blood received in 1987.
Ms. Thomas further claims that it was not until December 1999 when her father informed her that when she was twelve years of age, she had a blood transfusion at Charity Hospital. That transfusion would have occurred in 1973. Ms. Thomas then filed the strict liability claim, which is at issue in this appeal. Ms. Thomas asserts that at no time prior to her discussion with her father, could she have known about the 1973 transfusion.
RHowever, Ms. Thomas’ medical records and deposition testimony indicates that in 1996 she had, at the very least, constructive knowledge that she had Hepatitis C. On September 22, 1994, Dr. Yolanda O’Rourke at the MCLNO Medicine Clinic, performed tests upon plaintiff including a hepatitis C profile. Dr. O’Rourke told Ms. Thomas to return on March 2, 1995, to discuss her results. Ms. Thomas attended that follow-up visit. At that time, Dr. O’Rourke noted that the patient was “reactive for HCV antibodies.” Her impression was of Hepatitis C with mildly elevated liver function tests. Ms. Thomas was instructed to call back for more specific results. Ms. Thomas returned to see Dr. O’Rourke on May 18, 1995. At that time she was described a 33-year-old black female with hepatitis C, presenting for a follow-up. The plan was for Ms. Thomas to receive treatment at the liver clinic.
Ms. Thomas returned to MCLNO on September 12,1996. At that time, she was seen by Dr. Pravin Talati, and based upon the chart, had a discussion with him about her elevated liver function tests and her alcohol intake, which she stated as “drink 5 pint/wk.” Dr. Talati told Ms. Thomas to obtain an ultrasound and her Hepatitis profile from the Medicine Clinic and to return to see him. It appears the ultrasound was scheduled for September 19, 1996 at the Medicine Clinic. Ms. Thomas testified that she signed the page with the given instructions but did not follow the instructions.
On October 6, 1996, Ms. Thomas was seen in the Emergency Department of MCLNO. She presented her history to the examiner as 33 year old female who was seen by this clinic a month ago and her liver function test was found to be | sabnormaI. She agreed to an ultrasound of her liver at that time, however, she did not go and was at MCLNO again saying she felt weak and also gets anxiety. The physician referred the patient to LSU He-patology and recommended quitting drinking. Ms. Thomas signed that sheet along with the discharge sheet, which stated a history of alcohol abuse, abnormal liver function tests and positive HCV antibodies.
*191 According to her medical records she appeared at the Hepatology Clinic on November 8, 1996. On that visit she was seen by Dr. George Catini who stated that she was a 34 year old black female with a history of alcohol use and that she had a history of blood transfusion with three units of packed red blood cells when her ovary was removed.
Dr. Catini’s testimony supports the fact that Ms. Thomas was informed in 1996 about her being positive for the hepatitis C virus. Dr. Catini testified that Ms. Thomas tested positive for hepatitis C and that the most likely source would have been a blood transfusion. In addition, he would have further informed her that she could not drink alcohol. Though Ms. Thomas recalls the “do not drink alcohol” instruction she claims Dr. Catini did not inform her that she tested positive for hepatitis C.
Ms. Thomas not only contends that she had no way of finding out about her 1973 blood transfusion until 1999, but also had no idea about having hepatitis C until 1998. The doctrine of contra non valentem undoubtedly applies to the circumstances of the instant case. It is for this court to determine at what time Ms. Thomas had adequate notice to prompt further inquiry into her condition. Ms. (Thomas claims that her cause of action was not known, or reasonably knowable. see Wimberly v. Gatch, 635 So.2d 206 (La.1994). However, the facts presented do not support such a finding. Her medical records clearly indicate otherwise. Even though she may have been ignorant of, or misunderstood, the extent of her illness, she could still have the requisite knowledge to commence prescription, see Renfroe, supra. At the very least, Ms. Thomas had constructive notice reasonably sufficient to lead to further inquiries about her condition back in 1996.
In Ducote v. Touro Infirmary, 2003-0755 (La.App. 4 Cir. 10/22/03); 860 So.2d 125, this court found that a notice to the plaintiff from a blood bank indicating that she was infected with the hepatitis C virus twenty years prior to becoming symptomatic, was sufficient notice to commence the running of prescription.
CONCLUSION
We agree with the trial court’s finding that Ms. Thomas had sufficient notice to begin the running of prescription in 1996. Therefore, this case was prescribed at the time of filing. Accordingly, we affirm the trial court’s ruling granting the Medial Center of Louisiana at New Orleans’ exception of prescription.
AFFIRMED.