CHARLES R. JONES, Chief Judge.
11 This is an appeal of a judgment awarding damages to 46 out of 50 class members involved in a toxic tort class action concerning injuries suffered while working at the Plaza Tower office building between 1996 and 2002. The Appellees, Sherry Watters, et al., (Appellees) are members of a class comprised of State employees who allege that while working in the Plaza Tower office building, they were exposed to mold. The class is made up of Department of Health and Hospitals (DHH) and Department of Social Services (DSS) employees, who suffered a variety of health issues due to their exposure to mold and mold byproducts. Finding that the district court did not err in awarding damages to the Appellees, we affirm the judgment of the district court.
On October 25, 2001, Appellees Sherry Watters, Gina Recasner, Wendy Lemiux, Frances Breyne, and Gretchen Wiltz, the five class representatives in this case, filed a class action suit against the State alleging therein personal injuries through their exposure to toxic mold in the Plaza Tower. Particularly, they allege |2that they suffered “inter alia”, headaches, respiratory infections, sore throats, body aches, flu-like symptoms, itching, and increases in allergy reactions caused by their exposure to mold, mold spores, and their by-products during their occupancy of the Plaza Tower as State employees from 1996 to 2002. After a class was certified and the certification was affirmed on appeal, the district court conducted a seven-day bench trial in November 2007, to determine the common issues for the class and damages for the five class representatives.
On March 10, 2008, the district court rendered judgment on liability in favor of the class and awarded each of the five class representatives $25,000 in general damages for pain and suffering, and $10,000 for mental anguish and emotional distress. On June 17, 2009, this Court affirmed the judgment of the district court as to every issue; however, we reduced the State’s percentage of fault from 100% to 35%.[1] On October 30, 2009, the Louisi *123 ana Supreme Court denied the writ applications of both parties.
Thus, by the end of 2009, the Appellees had established on behalf of the class that:
(1) the Plaza Tower was infested with harmful mold, particularly Staehybotrys, related to deplorable building conditions; (2) the State had breached its duty to its employees by requiring them to work in a building with such conditions; (3) that Sta-chybotrys mold can cause a variety of symptoms including respiratory symptoms, nasal irritation, sinus discomfort, watery eyes, throat discomfort, coughing, nasal symptoms, runny, blocked, or stuffy nose, headaches, |sitchy skin, weak voice, swallowing problems, and other related issues; and (4) the State is liable for 35% of the damages suffered by the Appellees.
The State insisted and repeatedly requested that each individual class member prove at trial that he or she suffered harm because of the exposure to mold. However, because of the logistical issues of trying over 600 individual claims, the parties decided to try the damage claims in flights, with the first fifty (50) class members’ damage claims being tried over three days in October 2010. In March 2011, the district court, based on this Court’s determination of a benchmark for damages in this case set at $25,000 for general damages, and $10,000 for mental anguish, awarded to qualifying class members damages with a starting point of the aforementioned set amount. Thus, the State flies this timely appeal.[2]
The State raises seven (7) assignments of error on appeal:
1. The Appellees failed to prove specific causation because they did not introduce medical evidence linking their particular injuries to mold exposure at the Plaza Tower.
2. The district court committed reversible error because the evidence introduced at trial does not justify the amount of damages awarded to the Appellees.
3. The district court awarded damages for health concerns that were not shown to be causally related to mold exposure.
4. The district court erred in admitting “Proof of Loss” forms into evidence at trial. The court improperly relied on the hearsay content of the documents to formulate its damage awards.
5. The district court erred in admitting into evidence and relying on uncerti-fied and partial copies of the Appel-lees’ medical records.
6. The district court erred in overruling the State’s Exceptions of Prescription as to the claims of Michelle Armstead Allen, Pauline Banks, Alma Brule, Charles Ellis, and Betty Lou Bell.
7. The district court impermissibly applied a mathematical formula to determine the amount of the Appellants’ damage awards.
14Factual findings (including breach of duty, cause-in-fact, legal causation, and actual damages) are subject to the manifest error standard of review. Watters v. Dept. of Social Services, 08- *124 0977, p. 16, (La.App. 4 Cir. 6/17/09), 15 So.Sd 1128, 1142, (citing Snearl v. Mercer, 99-1738, 99-1739, p. 11 (La.App. 1 Cir. 2/16/01), 780 So.2d 563, 574). When the factual findings are based on the credibility of a witness’s testimony, the appellate court must give great deference to the fact finder’s decision to credit a witness’s testimony. Id., citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). “... Because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listeners understanding and belief in what is said.” Orleans Sheet Metal Works & Roofing, Inc. v. Rabito, 04-0359, pp. 3-4 (La.App. 4 Cir. 8/17/05), 916 So.2d 1143, 1146-1147, citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
In the first assignment of error raised on appeal, the State asserts that the Appellees failed to prove specific causation because they did not introduce medical evidence linking their particular injuries to mold exposure at the Plaza Tower. The State argues that the district court manifestly erred in determining that it was more probable than not that 46 of the class members suffered harm due to their exposure to mold while working for the State in the Plaza Tower between 1996 and 2002.
“Specific causation refers to proving a sufficient causation link between the alleged health problems and the specific type of mold.” Watters, 08-0977, p. 17, 15 So.3d at 1143. “The test for determining the causal relationship between the tortious conduct and subsequent injuries is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by accident.” Id., p. 31,15 So.3d at 1152. “A trial court’s finding of causation is a factual finding that should not be disturbed unless the record does |snot furnish a basis for that finding, and it is clearly wrong or manifestly erroneous.” Zimko v. Am. Cyanamid, 03-0658, p. 29 (La.App. 4 Cir. 6/8/05), 905 So.2d 465, 486, writ denied, 05-2102 (La.3/17/06), 925 So.2d 538, citing Egan v. Kaiser Aluminum & Chemical Corp., 94-1939, p. 8 (La.App. 4 Cir. 5/22/96), 677 So.2d 1027, 1034. The manifest error rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Id.
Here, the State asserts that though the Appellees’ medical expert, Dr. Kashmir Rai, testified as to the specific causation between the Plaza Tower mold and the symptoms of the five class representatives, Dr. Rai failed to provide testimony of specific causation pertaining to the remaining class members. The district court found that specific causation existed without testimony from a medical expert was acceptable in this matter based on: 1) its reliance on Howard v. Union Carbide Corp., 09-2750 (La.10/19/10), 50 So.3d 1251, for the proposition that medical testimony was not necessary; 2) its finding that “there can be no doubt that if the plaintiffs were to call Dr. Rai to testify per each member, that her testimony regarding the Appel-lees symptoms would be the same as that of the class representative;” and 3) its holding that requiring expert medical testimony would defeat the purpose of the class action.
The district court relied on our findings in Watters, 08-0977 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, holding that the class representatives have met their burden of proving specific causation. In Wat-ters, we analyzed all the facts and evidence presented at trial and the findings of the district court. We found that there was a significant amount of mold in the premises based not only on the testimony of lay witnesses and class members, but also *125 from the Appellees’ experts Land Kenneth Lanier, an Environmental Health Science Manager with the Louisiana Environment Epidemiology and Toxicology Office of Public Health. Id., pp. 17-18, 15 So.3d at 1143-1144. The experts found that the type of mold found in the Plaza Tower, Stachybotrys, was consistent with the symptoms and diseases suffered by the class members. Further, Stachybotrys mold was rarely found outdoors and therefore, in order for all of the class members to have been affected by it, they would have had to come in contact with it while in the building. Id., p. 22, 15 So.3d at 1146. We further reviewed the testimonies and documents providing the description of the symptoms which the class members had incurred. In finding that there was actual exposure to mold in the building; the fact that exposure to such mold can cause diseases and that the symptoms, such as wheezing, coughing, runny nose, etc., which the employees were experiencing could be a direct reaction to the mold, this Court concluded that the class members had sufficiently proved general causation. Id., pp. 25-26, 15 So.3d at 1147-1148.
This Court, in determining whether the class members met their burden of proving specific causation, considered the doctrine of the “sick building syndrome,” which sets out two provisions in determining specific causation. The doctrine’s provisions were met if the class showed that they did not suffer from any of the reported symptoms prior to their employment at the Plaza Tower, and whether upon their leaving the Plaza Tower for a period of time, their symptoms abated. Id., pp. 24-27,15 So.3d at 1147-1149. This Court noted that the testimony of each class representative established that they did not suffer from their reported symptoms before their employment at the Plaza Tower, and they have not had or have suffered fewer symptoms since their leaving the Plaza Tower. The class representatives, in addition to their testimony, presented their medical expert |-/witness, Dr. Rai, who had examined each of the class representatives and had concluded that the symptoms suffered by the representatives and their health history were consistent with exposure to the Stachybotrys mold set forth in Mr. Lanier’s report. Based on the above, in Watters, we opined that the class representatives had established their burden of proving specific causation linking their symptoms to the mold found in the Plaza Tower:
Accepting Dr. Rai’s opinion, the trial court concluded that “the weight of the evidence presented in the instant case supports the conclusion of a causal connection between the mold and mold spores in the Plaza Tower and the symptoms suffered by DHH and DSS employees.”
******
Based on the testimony of the Class Representatives regarding the short-term adverse health effects they experienced while employed in the Plaza Tower, coupled with the testimony of Dr. Rai linking those health effects to exposure to mold in the building, we cannot conclude that the trial court’s finding of specific causation is manifestly erroneous.
Id., pp. 31-32, 15 So.3d at 1152. Based on this Court’s findings that the Appellees had met their burden of proving specific causation, the district court concluded that 46 out of 50 class members suffered injuries and symptoms due to the mold found in the Plaza Tower.
The State’s assertions that the Appellees failed to introduce medical evidence is erroneous. As stated by the district court, to request medical expert testimony and a *126 medical report from each individual would void the purpose of class actions. The class representatives of this class action provided a medical expert’s testimony. This medical expert provided concrete findings and reasoning for her determination that the symptoms of the class representatives were related to |sthe mold found in the Plaza Tower. This finding of specific causation by the class representatives is significant of the remaining class members.
It is clear that Louisiana law does not require medical expert examination of each class member’s symptoms before the court can find that specific causation has been met. As in Howard v. Union Carbide Corp., 09-2750, pp. 3-4 (La.10/19/10), 50 So.3d 1251, 1254-1255,[3] the Fifth Circuit Court of Appeal and the Supreme Court affirmed the district court’s findings that the class members had met their burden of proving causation without any evidence that a medical expert examined each one of the class members. In fact, the record in Howard showed that not all of the class members sought medical treatment for their symptoms. Id. Thus, the distribution of the damage awards in this matter was without error.
The State’s assertion seeks to deter from the purpose and intentions of class actions. Class actions are utilized to provide cost-effective and expedited litigation for all of the parties involved. McCastle v. Rollins Envtl. Services of Louisiana, Inc., 456 So.2d 612, 619 (La.1984); see also Advisory Committee Notes, supra, 39 F.R.D. 69, 102-103. To require each member of the class to be examined by a medical expert before testimony can be given pertaining to the class as a whole would present extensive costs to be incurred by the class members. “[C]lass action is superior to other procedural methods available for the fair and efficient adjudication of the controversy, since the class action is otherwise appropriate because of the numerous members of the class, and because of the adequate representation assured by the plaintiffs instituting this class action.” Williams v. State, 350 So.2d 131, 134-35 (La.1977). Thus, the selections of class representatives are provided as a figurehead for the class. All decisions and | ¡judgments for or against the class representatives, also apply to the class. La. C.Civ.P. art. 597 further provides: “A definitive judgment on the merits rendered in a class action concludes all members of the class, whether joined in the action or not, if the members who were joined as parties fairly insured adequate representation of all members of the class.” Therefore, here, the finding that the class representatives proved specific causation also applies to the remainder of the class members.
In this matter, causation and damages were common to the entire class. All of the class members suffered from a number of similar symptoms stated above; their symptoms were not present or were very minimal before working in the Plaza Tower; and further, after their dismissal from the building, their symptoms abated. “ ‘[A] class representative must be part of the class and ‘possess the same interest and suffer the same injury’ as the class members.’ ” Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26, 117 S.Ct. 2231, 2250-51, 138 L.Ed.2d 689 (1997), citing East Tex. Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974)). In applying *127 this to the instant matter, as established by Dr. Rai, the class representatives were a part of the class and possessed the same symptoms and diseases suffered by the class members. Therefore, this assignment of error is without merit.
In their second assignment of error, the State argues that the district court committed reversible error because the evidence introduced at the trial does not justify the amount of damages awarded to the Appellees. District courts are vested 110with great discretion when awarding damages. See Miller v. Lammico, 07-1352, p. 28 (La.1/16/08), 973 So.2d 693, 711. “An appellate court may disturb a damages award only after an articulated analysis of the facts discloses an abuse of discretion.” Id. As the Fifth Circuit has explained:
[t]he discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Howard v. Union Carbide Corp., 08-750, p. 5 (La.App. 5 Cir. 10/27/09), 21 So.3d 1084, 1087, writ granted, 09-2750 (La.4/23/10), 32 So.3d 808, and aff'd as amended, 09-2750 (La.10/19/10), 50 So.3d 1251, citing Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The district court as fact finder, determined that the reports, tests, examinations, testimony of the medical expert and the testimonies of all of the class members were credible and proved causation linking the symptoms suffered by the class members to the mold found in the Plaza Tower. We find that district court did not err in finding the demonstrative evidence credible; hence, awarding damages to 46 out of 50 of the class members. The record and exhibits presented support the findings of the district court. Thus, this assignment of error is without merit.
The third' assignment of error raised by the State is that the district court erred in awarding damages for health concerns that were not shown to be causally |nrelated to mold exposure. The State argues that the court erred in awarding damages to certain class members whose symptoms fell outside of the symptom guidelines provided by Dr. Rai, specifically those symptoms identified with “damp indoor spaces.” The State argues that the district court awarded damages to individuals who complained of symptoms such as headaches and fatigue, and that these symptoms are not causally related to the mold exposure in the Plaza Tower. The State bases its arguments on the testimony of Dr. Rai during the 2007 trial on common issues. During this trial, Dr. Rai testified as to the symptoms which are sufficient evidence of an association to the mold found:
I’m only saying that the things that they said, that they could categorize is that— which are either a damp indoor environment, which is upper respiratory (nasal and throat) tract symptoms; cough; wheeze; asthma symptoms in sensitized asthma people; or in the case of mold, upper respiratory (nasal and throat) tract symptoms; asthma symptoms in sensitized people; hypersensitivity pneumonitis; wheeze; cough. Those are the only symptoms that they’re saying are sufficient evidence of an association.
*128 However, she further testified, when asked about another Appellee’s symptoms:
A: Although she had predisposing symptoms of headaches and sinusitis, I feel that it was adversely affected by mold exposure. Her headaches and sinus symptoms increased, she noticed itchy skin for the first time, and she had symptoms of runny, blocked, or stuffy nose.
Q: And do you relate her symptoms as she presented them to you to a degree of medical certainty to have resulted from her exposure to mold, mold spores, and the by-products of mold and mold spores at the Plaza Tower office building?
A: Ido.
Therefore, based on the testimony of Dr. Rai, the district court concluded that the symptoms of the class representatives, which included cold-like symptoms,
11 ¡.fatigue, headaches, nasal symptoms, sinus discomfort, coughing, watery eyes, throat discomfort, sinusitis, itchy skin, bronchitis, rhinitis, nose bleeds, respiratory symptoms, nasal irritation, runny, blocked, or stuffy nose, headaches, itchy skin, weak voice, and swallowing problems are related to mold exposure. Watters, pp. 26-27, 15 So.3d at 1148-49. The district court concluded that “the weight of the evidence presented in the instant case supports the conclusion of a causal connection between the mold and mold spores in the Plaza Tower and the symptoms suffered by DHH and DSS employees.” Id., p. 31,15 So.3d at 1152. This Court further affirmed the district court’s findings and decision that the class representatives’ symptoms were consistent with mold exposure based on the testimony of Dr. Rai and that of the class representatives. Id. Therefore, this assignment of error is without merit. The record shows that the district court did not err in awarding damages for symptoms which are linked to the mold in the Plaza Tower.
In the State’s fourth assignment of error, it argues that the district court erred in admitting “proof of loss” forms into evidence at trial. Arguing that the court improperly relied on the hearsay content of the documents to formulate its damage awards, the State asserts that “proof of loss” forms which were completed by the Appellees in 2004, during a settlement agreement with the Plaza Tower building owners and insurers, were an out of court statement. Therefore, the State avers, under the Louisiana Code of Evidence, it is barred as hearsay. The State argues that the forms were completed for the sole purpose of collecting settlement funds, that they were filled out long after the claimants stopped working at the Plaza Tower, and lastly, were not sworn to or certified in any manner.
1 ^Considering the untimely objection of the State to the admissibility of this evidence by the allotted time given by the district court, September 17, 2010, we pre-termit this assignment of error. The district court has vast discretion in the sort of evidence allowed to be admitted into evidence. Young v. Joy, 09-756, p. 2 (La.App. 3 Cir. 2/3/10), 30 So.3d 1116, 1119. Here, the district court did not abuse its discretion.
The fifth assignment of error raised by the State is that the district court erred in admitting into evidence and relying on uncertified and partial copies of the Appellees’ medical records. As previously discussed, the State failed to make a timely pretrial objection to the admissibility of the medical records as ordered by the district court. However, on further review of this assertion, we find that the district court did not err.
*129 The State bases its arguments on La. R.S. 13:3714, which states in pertinent part:
A. Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any other state health care provider, as defined by R.S. 40:1299.39(A)(1) and any other health care provider as defined in R.S. 40:1299.41(A), certified or attested to by the state health care provider or the private health care provider, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the bills, medical narrative, chart, or record is sought to be used may summon and examine those making the original of the bills, medical narrative, chart, or record as witnesses under cross-examination.
The State argues that because the records at issue were not certified pursuant to La. R.S. 13:3714, the district court could not rely on the contents thereof to 114award damages to the Appellees. However, the argument of the State is without merit as La.Code of Evidence art. 803(4) allows for the admission of uncertified medical records and statements for the purpose of medical treatment to be admitted into evidence.
(4) Statements for purposes of medical treatment and medical diagnosis in connection with treatment. Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.
Further, La.Code of Evidence 901(A) provides:
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
Here, the duplicates of the medical records were submitted by the Appellees to the State as ordered by the district court on September 17, 2010. The State failed to object to the medical records upon receiving them. The records show that these documents are authentic duplicates of medical records, which were submitted during the prior matter in 2004. The State had the opportunity to cross examine the class members about the contents of the medical records. The medical records, which the State does not rebut as authentic medical records, are the actual medical records of the class members. The medical records were copied from the originals and were provided to the Special Master in conjunction with the distribution of the settlement funds relating to the instant matter.
Further, the records on file show that the originals of the medical records were either destroyed during Hurricane Katrina in 2005, or by the medical | ^providers as per their document retention policy of seven (7) years. We reiterate that the district court has vast discretion in its decision to admit or deny evidence. Here, the district court did not commit manifest error in admitting the uncertified medical records into evidence. Thus, this assignment of error is without issue.
The sixth assignment of error raised by the State is that the district court erred in overruling the State’s excep *130 tion of prescription as to the claims of Michelle Allen, Pauline Banks, Alma Brule, Charles Ellis, and Betty Lou Banks. The State argues that these five named individuals stopped working in the Plaza Tower building for more than one year prior to the filing of this class action. The State argues that since these class members stopped working prior to October 29, 2000, prescription bars these claims from being part of the class pursuant to La. C.C. art. 3492, and further, the doctrine of contra non valentem does not preserve their claims. The State maintains that since the Appellees’ claims are tort claims, they are subject to a one year prescription period under La. C.C. art. 3492, which states: [djelictual actions are subject to a liberative prescription of one year. Thus, prescription commences to run from the day injury or damage is sustained.
The State, prior to the October 12, 2010 hearing, filed an exception of prescription in the district court against Ms. Brule and Ms. Allen. This exception was denied by the district court. The State failed to raise any exceptions of prescription against the three other class members, Ms. Banks, Mr. Ellis, and Ms. Bell in the district court; however, with its appeal, the State filed a supplement to its brief arguing the exception of prescription against Ms. Banks, Mr. Ellis, and Ms. Bell. The State argued that its exception of prescription against these three class members could not be timely filed in the district court due to the delay of the class in adding them as class members. However, "... [IJiberative prescription of |16one year generally begins to run when the victim knows or should know of the damage, the delict and the relationship between them.” Bailey v. Khoury, 04-0620, 04-0647, 04-0684 (La.1/20/05), 891 So.2d 1268, 1275-1276. “Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage.” Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La.1987).
In the matter sub judice, the five class members testified as to the symptoms they incurred while working at the Plaza Tower. However, during their employment in the Plaza Tower, no appreciable facts could attribute the Appellees’ symptoms to the Stachybotrys mold found in the Plaza Tower because of the State’s constant reassurance to the employees that the building was safe and could not possibly be causing their symptoms and diseases. Further, the symptoms suffered by the Appellees were also common symptoms of a cold or flu virus. Therefore, with this constant declaration that the building was not contaminated with mold, these five class members could not have formed the association of the mold in the Plaza Tower to their symptoms. Though these individuals incurred symptoms while working at the Plaza Tower, and most of their symptoms alleviated after they left the building for at least one year prior to the filing of this suit, it was implausible for them to attribute their symptoms to the Plaza Tower. Though they witnessed unsanitary premises and mold infested walls while in the building, they relied on their employers’ assurance that the building was safe and did not attribute any of their symptoms to the alleged environmental hazards. It |,7was not until 2001, that these class members concluded that they were harmed due to the mold in the Plaza Tower.
The State argues that prescription on these class members’ claims commenced to run when they stopped working in the building. Their argument is without merit as prescription could not commence since these individuals neither knew nor should *131 have known the cause of their symptoms. They were not aware that the mold in the Plaza Tower caused their symptoms since their inquiries were repeatedly rebutted by the State’s insistence and assurance that the building was safe.
The State further argues that the doctrine of contra non valentem is not applicable to these Appellees’ claims. The doctrine of contra non valentem was created as an exception to the general rules of prescription. Contra non valentem can be applied “where the cause of action is neither known nor reasonably knowable by the plaintiffs even though the plaintiffs ignorance is not induced by the defendant.” Scott v. Am. Tobacco Co., Inc., 04-2095, pp. 16-17 (La.App. 4 Cir. 2/7/07), 949 So.2d 1266, 1279, writ denied, 07-0662 (La.1/7/08), 973 So.2d 740, writ denied, 07-0654 (La.1/7/08), 973 So.2d 740 (citing Renfroe v. State, ex rel. Dep’t of Transp. and Dev., 01-1646, p. 9 (La.2/26/02), 809 So.2d 947, 953; In re: Medical Review Panel of Thomas, 05-0879, 05-0880, p. 3 (La.App. 4 Cir. 5/31/06), 934 So.2d 188, 189-90).
In this matter, these class members neither knew nor reasonably could have known that the mold in the Plaza Tower caused or escalated their symptoms. The Appellees constantly inquired about their suspicions relating to the condition of the building. They made complaints to all the appropriate superiors and agencies; however, their complaints were not met with results. When the Appellees inquired |1Ras to whether the asbestos in the building caused their symptoms, they were informed that it was not the cause; however, the State did not inform or provide them with any indication that possible mold in the building could be the cause of their symptoms and diseases. Under the doctrine of contra non valentem, prescription “commences when the plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.” Campo v. Correa, 01-2707, pp. 11-12 (La.6/21/02), 828 So.2d 502, 510. Therefore, prescription does not run against a plaintiff who is unaware of the facts upon which her cause of action rests unless his ignorance is willful, negligent or unreasonable. Hoerner v. Wesley-Jensen, Inc., 95-0553, p. 4 (La.App. 4 Cir. 11/20/96), 684 So.2d 508, 510, citing In re Howard, 573 So.2d 472, 474 (La.1991).
Here, the five class members failed to assert their case, not because of personal ignorance or facts that would entitle them to a cause of action under Hoemer, but rather because their ignorance wasn’t willful. The Appellees were not aware they had a cause of action when the State did everything possible to refute any allegations of mold in the building. The State set up signs and posters at the entrance of the building confirming the safety of the building. This false advertisement alone would place anyone in doubt about whether a cause of action exists. None of the five class members had knowledge of the mold that was causing their symptoms and illnesses. Though they suffered symptoms for a period of time, it was not as severe as others who required medical treatment. The failure of the State to act on the employees’ complaints and its assurance that the building was safe and could not be the cause of their symptoms and diseases, delayed these 119class members’ knowledge that possible toxins in the building was causing their symptoms.
The State delayed its inquiry about the conditions of the Plaza Tower until 2001, and it was this delay that placed these five class members in the position of not knowing about the cause of their symptoms during their time in the Plaza Tower. These class members filed suit immediately upon acquiring knowledge of how they were injured. It is irrelevant that they *132 stopped working at the Plaza Tower building at least a year before the suit was filed. They filed suit within a year of their actual knowledge of the cause of their symptoms and diseases. Therefore, the district court did not err in denying the State’s exception of prescription. We similarly find that the claims of Ms. Banks, Mr. Ellis, and Ms. Bell are not prescribed.
In the final assignment of error raised by the State, it alleges that the district court impermissibly applied a mathematical formula to determine the amount of damage awards of the Appel-lees. The State asserts that the district court adopted the method for distribution of settlement funds used in the Rhodes v. State Through Dept. of Transp. and Development, 94-1758 (La.App. 1 Cir. 12/20/96), 684 So.2d 1134, as its model for awarding damages in this case. The State further argues that according to the reasoning of the Louisiana Supreme Court in Pennington v. Justiss-Mears Oil Co., 242 La. 1, 9-10, 134 So.2d 58, 56 (1961), the use of mathematical formulas in calculating damages is prohibited. The State asserts that the district court, with its starting point award of $35,000 ($25,000 in general damages plus $10,000 for mental anguish), worked backwards, deducting a fixed percentage from the starting figure based on the length of time that an employee worked in the building, whether he or she offered evidence of contemporaneous | aomedical treatment, and whether he or she claimed to have suffered emotional distress. The district court, to find a final damage award, reduced the amount by the percentage of fault attributed to the State, which was 35%.
The argument of the State is inexact. In its written reasons for judgment, the district court expressly stated that it considered the totality of the circumstances in determining each damages award. The district court reasoned that it would be unjust to award damages based on the length of time an individual worked at the building. This is because two different individuals could have worked for the same length of time, but suffered different degrees of injuries and symptoms. Therefore, the district court reasoned that each damages award would have to be based on the totality of the circumstances; by reviewing the number of years one worked, the severity and length of the symptoms suffered, and whether they obtained medical help. The district court, based on its reasoning, awarded damages to 46 out of 50 of the class members, denied damages to one class member, and postponed damage awards to three class members until additional testimony was provided. “It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.” Watters, p. 37, 15 So.3d at 1154-1155.
The district court followed the award guidelines established by this Court in Watters, 08-0977 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128. The district court did not award excessive damages which, on appellate review, could be deemed an abuse of discretion. Finally, the district court awarded damages based on the totality of the circumstances of each individual class member. Thus, the |⅞1 assignment of error raised by the State is without merit. The district court did not abuse its discretion.
DECREE
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED

. "[T]he judgment of the trial court is amended in the following two respects: to reduce the allocation of fault to the State from 100% to 35%, and to reduce the amount awardable *123 as reasonable court costs from $333,577.08 to $23,302.98. In all other respects the judgment of the trial court is affirmed.” Walters v. Dep’t of Soc. Services, 08-0977, p. 52 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, 1163, writ denied, 09-1651 (La. 10/30/09), 21 So.3d 291 and writ denied, 09-1638 (La.10/30/09), 21 So.3d 293.

. While the Appellees submitted an answer to the appeal, when queried about the answer, counsel noted that it was waived.

. Howard v. Union Carbide Corp., 08-750 (La.App. 5 Cir. 10/27/09) 21 So.3d 1084.