| | | |
|---|---|---|
| JOHN JOHNSON, INDIVIDUALLY AND AS A REPRESENTATIVE OF THE CLASS OF THOSE SIMILARLY SITUATED | * | NO. 2022-CA-0639 |
| | * | COURT OF APPEAL |
| | * | FOURTH CIRCUIT |
| VERSUS | * | STATE OF LOUISIANA |
| ORLEANS PARISH SCHOOL BOARD, XYZ INSURANCE COMPANY, CITY OF NEW ORLEANS AND ABC INSURANCE COMPANY | * * * * * * * | |

**CONSOLIDATED WITH:**

JOHN JOHNSON, INDIVIDUALLY AND AS A REPRESENTATIVE OF THE CLASS OF THOSE SIMILARLY SITUATED

VERSUS

ORLEANS PARISH SCHOOL BOARD, XYZ INSURANCE COMPANY, CITY OF NEW ORLEANS AND ABC INSURANCE COMPANY

**CONSOLIDATED WITH:**

NO. 2022-CA-0700

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 1993-14333 C\W 1994-05446, 1994-12996, DIVISION "J"
Honorable D. Nicole Sheppard,
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rachael D. Johnson, Judge Nakisha Ervin-Knott)

**ERVIN-KNOTT, J., CONCURS IN THE RESULT.**

Linda Suzanna Harang
Law Offices of Warren A. Forstall, Jr., P.L.C.
320 N. Carrolton Ave, Suite 200
New Orleans, LA 70119-5111

Joseph M. Bruno

BRUNO & BRUNO LLP
855 Baronne Street
New Orleans, LA 70113

George J. G. Roux
ATTORNEY AT LAW
823 Saint Louis Street
New Orleans, LA 70112

Suzette P. Bagneris
THE BAGNERIS FIRM, LLC
1929 Jackson Avenue
New Orleans, LA 70113

Stephen B. Murray
MURRAY LAW FIRM
701 Poydras Street, Suite 4250
New Orleans, LA 70139

Roy J. Rodney, Esq.
John Karl Etter, Esq.
RODNEY & ETTER, LLC
935 Gravier Street,
New Orleans, LA 70112


COUNSEL FOR PLAINTIFF/APPELLANT


Beverly A. DeLaune
DEUTSCH KERRIGAN, LLP
755 Magazine Street
New Orleans, LA 70130-3672

Kimlin S. Lee
Derek Michael Mercadal
Donesia D. Turner
Corwin M. St. Raymond
CITY OF NEW ORLEANS
1300 Perdido Street, Room 5E03
New Orleans, LA 70112


COUNSEL FOR DEFENDANT/APPELLEE


**AFFIRMED**
**MAY 31, 2023**

In this consolidated matter, the Appellants, the Housing Authority of New Orleans and the City of New Orleans (collectively "the Appellants"), seek review of the district court's June 10, 2022 judgment, granting the Appellees' motion for summary judgment, who are 5002 class action claimants who resided, owned homes, and/or owned businesses and/or worked on the Agriculture Street Landfill site,[1] and awarding them compensable damages for emotional distress and diminution of property value in the amount of $75,323,455.71. Pursuant to our *de novo* review, we affirm the judgment of the district court.

### Facts and Procedural History

The underlying facts of this matter have been detailed previously, most recently in *Johnson v. Orleans Par. Sch. Bd.*, 22-0731, pp. 1-4 (La. App. 4 Cir. 3/15/23), 2023 WL 2521922. Below we recount the facts and procedural history germane to the matter *sub judice*.

---

[1] The Agriculture Street Landfill is a superfund site defined as the area bounded on the north by Higgins Boulevard, on the east by Louisa Street, on the south by Florida Avenue and on the west by Almonaster Avenue and Peoples Avenue Canal.

The instant appeal stems from a 30-year old class action regarding damages suffered by residents who lived on or adjacent to a former municipal landfill in New Orleans known as the Agriculture Street Landfill site (ASL) as well as business owners and their employees who owned businesses or worked on the ASL and students and employees of Moton School, which was located on the ASL.

Four categories of claimants existed when the class was originally certified by the district court in 1999: 1) current and former residents of the ASL; 2) current and former business owners and their employees who operated businesses and worked on the ASL; 3) current residents who owned homes or who are buying homes but have not completed their payments on the ASL; and 4) former students and employees of the Moton Elementary School, who attended or worked at the school, which is located on the ASL. The instant appeal pertains to the grant of summary judgment on behalf of the first three categories of claimants, as the claims of the students and employees of the Moton School have already been resolved.[2] Below is the relevant procedural history.

In 2005, a bench trial was held on the common claims of the total class against the Appellants, four former HANO insurers and the Orleans Parish School Board ("OPSB").[3] The district court rendered judgment on January 12, 2006, in

---

[2] The class members who are former students or employees at Moton Elementary School and who do not also have a claim against the Appellees, are not included as movers on the Motion for Summary Judgment at issue. Those class members claims against the Orleans Parish School Board were settled pursuant to a consent judgment dated October 11, 2017.

[3] Various district court judges have presided over this matter throughout the decades. Notably, Judge Nadine Ramsey presided over this case from 1996 to 2010. In 2013, Judge Ramsey was appointed to serve as Judge *ad hoc*, and tried the cases of the first flight of 65 plaintiffs. Subsequently, Judge Tiffany Chase presided over the class action settlement between the claimants and HANO's insurers in 2013 and in 2014, which included her appointment of the

favor of all the claimants, except those who attended and worked at the Moton School, and against the Appellees and HANO's insurers. The district court held that the Appellees and HANO's insurers were liable "jointly and *in solido* for all compensatory damages hereafter judicially determined to have been sustained by each member of these groups of the Class, with judicial interest from the date of demand on August 31, 1993, and for costs to be fixed by the Court." The district court further specified the amount of compensation due to the groups and/or subgroups of class members for emotional damages and property damages as follows:

1. For current and former residents who have lived on the ASL for at least twelve months prior to February 1, 1994:

    a. for 1- up to 5 years     $4,000.00/per year
    b. for 5 - up to 10 years   $25,000.00 (total);
    c. for 10 - up to 15 years  $30,000.00 (total);
    d. for 15 - up to 20 years  $40,000.00 (total);
    e. for 20 years or more    $50,000.00 (total).

2. Current and former business owners and their employees who have operated a business on the former landfill site for at least twelve months, prior to February 1, 1994, and who operated and or were employed there for:

    a. 1 - up to 5 years     $4,000.00/per year;
    b. 5-up to 10 years    $25,000.00 (total);
    c. 10 - up to 15 years  $30,000.00 (total);
    d. 15- up to 20 years   $40,000.00 (total);
    e. 20 years or more    $50,000,00 (total).

3. Current and former residents who have lived in the Adjacent Area within the boundaries of the class but outside of the EPA Super Fund site, which is generally

---

Special Master and Court Appointed Distribution Agent. Judge D. Nicole Sheppard presided over the hearing on the motion for summary judgment at issue in the instant appeal.

south of Higgins, west of Louisa, north of Industry, and cast of Montegut, $2,500.00 (total).

4. Current residents of homes that are located in the EPA Super fund site who are owners of record of their homes, and who are buying their homes but have not yet completed their payments. The full amount of the fair market value is determined at the time they are appraised in support of their claim.

5. Current residents of homes located in the Adjacent Area who are owners of record of their homes, and who are buying their homes but who have not yet completed the payment. 10% of the full amount of the fair market value of the home as that value is determined at the time, they are appraised in support of their claim.

On appeal of the 2006 judgment, this Court reduced the emotional distress damages of the claimants by half, but affirmed the judgment in all other respects. *Johnson v. Orleans Par. Sch. Bd.*, 06-1223, p. 24 (La. App. 4 Cir. 1/30/08), 975 So. 2d 698, 714. The Louisiana Supreme Court subsequently denied writs.[4] Thus, the modified emotional distress damage award became:

1. For current and former residents who have lived on ASL site for at least twelve months prior to February 1,1994, and resided there:

    a. for 1- up to 5 years    $2,000.00/per year
    b. for 5 - up to 10 years    $12,500.00 (total);
    c. for 10 - up to 15 years  $15,000.00 (total);
    d. for 15 - up to 20 years  $20,000.00 (total);
    e. for 20 years or more    $25,000.00 (total).

2. Current and former business owners and their employees who operated a business on the ASL site for at least twelve months, prior to February 1, 1994, and who operated and or were employed there for:

---

[4] The Louisiana Supreme Court denied the eight writs sought. *Johnson v. Orleans Par. Sch. Bd.*, 08-0607 (La. 6/27/08), 983 So.2d 1289, *writ denied*, 08-0664 (La. 6/27/08), 983 So.2d 1289; *writ denied*, 08-0671 (La. 6/27/08), 983 So.2d 1289; *writ denied*, 08-0672 (La. 6/27/08), 983 So.2d 1290; *writ denied*, 08-0673 (La. 6/27/08), 983 So.2d 1290: *writ denied*, 08-0674 (La. 6/27/08), 983 So.2d 1290; *writ denied*, 08-0675 (La. 6/27/08), 983 So.2d 1291; and, *writ denied*, 08-0682 (La. 6/27/08), 983 So.2d 1291.

> a. 1 - up to 5 years     $2,000.00/per year;
> b. 5 - up to 10 years    $12,500.00 (total);
> c. 10 - up to 15 years   $15,000.00 (total);
> d. 15 - up to 20 years   $20,000.00 (total);
> e. 20 years or more      $25,000,00 (total).

> 2. Current and former residents who have lived in the Adjacent Area within the boundaries of the class but outside of the ASL site: $1,250.00 (total).

Subsequently, in 2013, a bench trial was conducted for the first flight of 65 class members, who were not class representatives.[5] While the remaining plaintiffs were awarded damages for emotional distress "in accordance with the methods established at the initial trial," the district court's awards for diminution of property value differed from those of the 2005 trial. The district court made the following determinations: Gordon Plaza[6] properties were determined to have suffered a 20% loss in the present-day value of their homes; Press Park[7] properties were determined to have suffered a 20% loss of their pre-Katrina values; and properties adjacent to the ASL were awarded 10% of their average value of both parties appraisers. The judgment of the district court was affirmed on appeal. *Johnson v. Orleans Parish School Board*, 14-0277, (La. App. 4th Cir. 4/26/17) 219 So.3d 452.[8]

---

[5] Four of these claimants were dismissed for cause. Additionally, the claimants from the first flight trial are excluded from the motion for summary judgment at issue because their claims were resolved at trial.

[6] Gordon Plaza was a development of 67 single-family homes that were built on the ASL site in the late 1970s. The Gordon Plaza homebuyers were never informed that their homes were built on a former landfill site. *Johnson,* 14-0277, p. 3, 219 So.3d at 458.

[7] Press Park was a HANO owned and operated development that was constructed in the early 1970s as a result of a cooperative endeavor agreement between the City and HANO. It consisted of apartments and townhomes. "No remediation or special site preparation was done before Press Park was constructed." *Id.*, 14-0277, p. 2, 219 So.3d at 458. Additionally, the Press Park tenants and home buyers were not forewarned that the site had been a part of the City's landfill. *Id.,* 14-0277, pp. 2-3, 219 So.3d at 458

[8] Jimmie Thorns, Jr., a real estate appraiser, served as an expert for the Appellants in the 2013 trial. He testified as to the diminished values of the affected properties, but was noted to not

The Appellees and HANO's insurers subsequently entered into settlement negotiations. The Appellees moved for the appointment of a special master to oversee the settlement process. The district court appointed Paul R. Valteau, Jr., as special master, pursuant to La. Rev. Stat. 13:4165.[9] Subsequently, the district court appointed the accounting firm of Bourgeois, Bennett, LLC, to serve as the Court Appointed Disbursing Agent (CADA).[10]

---

possess expert experience in stigma or environmental damages. *Id.*, 14-0277, p. 20, 219 So. 3d at 469. The district court found that Mr. Thorns' calculations were reasonable as well as the expert for the plaintiffs, Appellees herein; therefore, the court averaged the figures and awarded a percentage of damages between the experts' percentages as described above. *Id.*, 14-0277, pp. 21-22, 219 So. 3d at 469-470. Mr. Thorns' conflicting affidavits related to the subject motion for summary judgment are discussed later in this opinion.

[9] The powers given to Special Master Valteau by the district court were to:

> a) supervise the distribution of Notice to the Class;  b) develop a plan for establishing appropriate reserves to be deducted from the settlement funds and "judgment funds", so that the Court can determine the amount of money available from the settlement funds and "judgment funds" for distribution to Class members; c) establish criteria for evaluating the claims of Class members; d) review and evaluate claims of Class members in accordance with the established criteria, and resolve any objections to the proposed settlements and/or any proposed allocations; e) propose allocations for each Class member in accordance with the evaluation protocol; f) prepare a plan for distribution of the individual allocations; g) review and make findings and recommendations regarding payment of attorneys' fees and reimbursement of approved litigation costs; h) establish, a protocol for the receipt of and repository of objections; and i) such other acts and functions as may be necessary or appropriate to fulfill his/her duties and responsibilities as the Court may direct, and to engage such staff, deputies and experts as are deemed necessary, and are approved by the Court.

[10] When the district court appointed the CADA, it ordered that it:

> shall perform the duties and responsibilities of the CADA under the supervision of the Court and/of its designee, and as such, will be charged with the responsibility, in conjunction with the Special Master, of maintaining records pertaining to receipts and disbursements; managing the final aspects' of claims, fees costs, taxes and expenses; and administering, with the Escrow Agent, the settlement fund, subject in all respects to further orders and direction from the Court.

Special Master Valteau, with the assistance of the CADA, reduced the number of claimants from 7702 to 5002. Additionally, Special Master Valteau was assisted by appraiser Jimmie Thorns, Jr., who prepared drive-by appraisals of properties on and adjacent to the ASL. Special Master Valteau filed his report with the district court, recommending settlement of the claims as calculated therein. His report was accepted, and the district court adopted his calculations in dispersing the settlement proceeds.

Subsequently, on April 9, 2021, the Appellees filed a Motion for Summary Judgment on behalf of 5,002 confirmed eligible members of the John Johnson class, seeking to recover compensable damages for emotional distress and diminution of property value, asserting:

> There is no genuine issue of material fact regarding these Class claimants' entitlement to individual Judgments in their favor against HANO and the City jointly and *in solido*, based on the Court's final 2006 Judgment, the final 2013 Flight 1 Judgment, and this Court's rulings approving the distribution of the HANO insurers' settlement proceeds based on the certified review and report of the Special Master.

The Appellees attached seven exhibits to their motion: 1) the affidavit of CADA Li Downing with supporting spreadsheets; 2) the affidavit of Special Master Valteau; 3) an April 30, 2019 affidavit of appraiser Jimmie Thorns, Jr.;[11] 4.) the affidavit of attorney Suzette Bagneris; 5.) the affidavit of attorney Linda Harang; 6.) a May 10, 2011 district court order; and 7.) a March 24, 2011 district court judgment. The Appellants sought a judgment against the Appellees jointly

---

[11] In their motion for summary judgment, the Appellees explained that the original affidavit of Mr. Thorns was submitted to the district court by Special Master Valteau, in support on his Special Master's report. Mr. Thorns' appraisal values were ultimately accepted by the district court to approve settlement and the allocations to class members for loss of property value.

and *in solido* for emotional distress and property damages totaling $75,323,455.71, plus judicial interest.

The affidavit of Linda Harang, counsel for the Appellees, was stricken by the district court when it granted the Appellants' motion to strike. Additionally, the district court partially granted the Appellants' motion to strike the affidavit of Special Master Valteau by striking paragraph 21 of his affidavit. The motion was denied in all other respects.

In Special Master Valteau's affidavit he attests to the mandate given to him by the district court in February 2014, to evaluate all of the claims submitted through the proof of claim process, and ascertain which claims were eligible to receive a settlement distribution from the proceeds of the class settlement with HANO's four former insurers. He verifies that he reviewed the proof of claim forms ("POCs") submitted to determine: which claims met the criteria for class membership; which claims were eligible to receive settlement proceeds pursuant to the Court's criteria; and how much each claimant was entitled to receive based upon their unique circumstances. He further attests to the methodology he employed, including "how he performed his court appointed tasks and how he compiled numerical data that resulted in this Court (the district court) approving the actual dollar amount owed to each qualified Class member by HANO and the City of New Orleans *in solido*."

Special Master Valteau states that he was assisted by Bourgeois Bennett, the CADA, in determining the claimants' identities and classifying what claimants

8

belonged in each eligible claims group and sub-group. He further describes working with appraiser Jimmie Thorns, Jr., to have the homes of each eligible claimants on the ASL site and the Adjacent Area appraised. He verifies that he included Mr. Thorns' appraisal values in his submission to the district court, noting that the Gordon Plaza homeowners were entitled to 20% of post-Katrina value, Press Park homeowners were entitled to 20% of pre-Katrina value and homeowners in the Adjacent Area were entitled to 10% of post-Katrina present value.

He attests to submitting his findings to the district court, and that following a fairness hearing, the district court approved the settlement, the POC process and his POC evaluations of each class member. He further verifies that the information contained in the POCs combined with the information he obtained as Special Master, including from Mr. Thorns, provides the district court with sufficient evidence "to now make compensatory awards to each of the remaining eligible Class members, using the criteria set out in the 2006 and 2013 judgments, which were reviewed and affirmed by the 4th Circuit Court of Appeal and the Louisiana Supreme Court." Lastly, he states that after reviewing the 2006 and 2013 district court judgments and the timely and correctly completed POC forms, he finds that a determination of the total award now due to the remaining claimants from the Appellees can appropriately be made based upon the classifications of claimants provided in the 2006 district court judgment.

In Ms. Downing's affidavit, she attests to being a member and director of the Bourgeois Bennett public accounting and consulting firm, which since October 2008 has been engaged in this class action in three capacities: as a claims administrator; performing proof of claim processing and reporting; and serving as the court appointed disbursing agent. She states that her affidavit is based upon her personal knowledge and in conjunction with information provided to her. She verifies that Special Master Valteau made all of the claims eligibility determinations, including determining that of the 5002 class claimants, 5000 people made claims for emotional distress damages whereas 365 people made a claim for loss of property value. She verifies that each of the Appellants was assigned 50% responsibility for compensatory damages and judicial interest.

Based upon the Special Master's review, Ms. Downing attests to documenting the identity of the claimants with claims against the Appellants, categorizing their claims, and calculating their compensatory damages based upon the 2006 and 2013 judgments as well as the judicial interest. She sets forth that she calculated two types of judicial interest rates representing interest on the compensatory damages for the period from August 31, 1993, up until the February 24, 2015 class action settlement with HANO's insurers, and a second rate from the period of February 25, 2015 to April 9, 2021. She attests that her calculations for compensatory damages with judicial interest for the 5002 claimants totaled $75,323,455.71. Attached to Ms. Downing's affidavit were exhibits, specifically spreadsheets, detailing the identity of the 5002 claimants, and dividing their claims

into the categories and subcategories for compensable claims as set forth in the 2006 and 2013 judgements. Her spreadsheets also delineated her calculations for the amounts due to each claimant for unpaid compensatory damages from the Appellants combined with unpaid judicial interest.

In Mr. Thorns' affidavit he attests to being an independent fee appraiser that was retained in this matter to appraise the properties located on the ASL as well as in the Adjacent Area. He states that only a certain number of properties met the qualifications to receive an award pursuant to the district court's judgment. He received a list of the qualifying properties from Special Master Valteau that included 88 properties on the ASL and 173 properties in the Adjacent Area. Lastly, he attests to his methodology for estimating the market value of each affected property and preparing a report of his findings that he submitted to Special Master Valteau for inclusion in the record of this matter.

Suzette Bagneris, who serves as Lead Counsel on the Plaintiffs' Steering Committee, executed an affidavit attesting to the collaborative process the parties engaged in when creating the official form of the POC, pursuant to the June 25, 2009 order of the district court. Ms. Bagneris further sets forth that the district court ordered that each POC form be notarized and ruled that the failure to timely submit a complete and notarized POC would result in exclusion from eligibility to receive any payment with it by judgment or settlement. Lastly, Ms. Bagneris verifies that she assisted with claimants executing the POC form as well as producing and gathering supporting documentation for the forms, such as act of

sale documents, birth certificates, and Moton School employment records as well as report cards.

Prior to filing their opposition to the motion, the Appellants moved to continue the hearing on the motion for summary judgment and sought discovery of the claims files for the 5002 claimants as well as depositions of Special Master Valteau and his staff regarding the claims handling process. The district court denied the motion.

The Appellants filed an opposition to the motion requesting additional time for discovery and contesting the affidavits submitted in support of the motion for summary judgment. They moved to recuse Special Master Valteau. Moreover, HANO submitted an affidavit of Mr. Thorns, wherein he retracted and recanted his prior opinions and his 2013 appraisals.[12]

Subsequently, a motion to unseal the record filed by Appellant HANO was denied as moot by the district court on December 29, 2021.[13] However, on the same date, the district court granted a motion to unseal the record of Special Master Valteau's subject to three conditions: 1) the Special Master's records

---

[12] HANO, in support of its opposition to the Motion for Summary Judgment, attached an affidavit of Mr. Thorns, wherein he states that the appraisals of the 261 properties he performed in 2013, while assisting Special Master Valteau, are presently invalid and do not reflect present fair market values because the values of some of those properties have increased while others have decreased. He further sets forth that the opinions and analyses he expressed during the 2013 environmental stigma impact on the fair market value of the affected properties are no longer valid. Lastly, he attests that he has not been asked to update the 261 appraisals and has no present opinions on the current fair market values of those properties.

[13] On December 29, 2021, the district court also rendered moot the Appellant HANO's motion to unseal the record and issued a judgment: denying the Appellants' respective motions to continue the hearing on the appellees' motion for summary judgment; and denying the Appellants' request to conduct discovery and conduct depositions related to the appellees' motion for summary judgment.

related to insurance settlement allocations in this matter were unsealed for the limited purpose of allowing the parties to obtain a copy of the sealed records from the Clerk of Civil District Court at the cost of the requesting party, conditioned on the parties agreement to abide by an attached Stipulated Confidentially Agreement and Protective Order; 2) the Appellees pay fees and costs incurred by the Special Master and CADA in connection with the motion and order; and 3) said records would be re-sealed by the Clerk after all copies had been made.[14] Moreover, on February 3, 2022, the district court denied Appellee HANO's motion to recuse Special Master Valteau and granted his motion to quash the subpoena duces tecum of the Appellants.

Following a hearing on the Appellees' motion for summary judgment,[15] the district court granted the Appellees' motion, rendering judgment on March 14, 2022. The Appellees were awarded $75,323,455.71 plus judicial interest against the Appellants. However, the Appellees filed a motion for new trial because the March 2022 judgment lacked the requisite decretal language. The motion was granted and the district court later rendered a June 10, 2022 judgment, granting the Appellees' motion, vacating the March 2022 judgment and rendering judgment against the Appellants.

---

[14] The record reflects that counsel for HANO emailed and e-filed a letter to the district court dated February 13, 2022, requesting a status conference to modify this order and proposing that the Appellant be allowed to view the records without the necessity of copying "the entire cache of documents that are under seal." In the alternative, counsel for HANO requested that the order should be modified to direct Special Master Valteau and the CADA to produce the sealed records in electronic format at no cost.

[15] The Appellees produced the POCs for the district court to review at the motion for summary judgment hearing.

In its Reasons for Judgment, the district court explained:

> Issues of liability have been resolved and there is now no need to make any determinations regarding Defendants' liability. As such, the sole responsibility of the Special Master now is the allocation and distribution of funds to Class member claimants. It is the determination of this Court that the Special Master has acted in accordance with his duties and determined the eligibility of claimants and, in conjunction with the CADA, the appropriate amount of compensation due them based on the established criteria. Defendants' arguments against the grant of summary judgment are a disguised attempt at relitigating the issue of liability, which the Court rejects.[16]

The Appellants each appealed the June 10, 2022 judgment. Their appeals were later consolidated by this Court.

The Appellants raise the following assignments of error:

1) The district court erred and abused its discretion when it failed to allow adequate time for discovery and denied the Appellants' motion for continuance, which violated the Appellants' due process rights;

2) The district court erred in awarding damages for diminution of property value and emotional distress to 5,002 class action claimants via a motion for summary judgment because such motions: are not designed for class-wide claims resolution; deny the Appellants substantive and procedural due process; and there are remaining issues of determining causation and damages that need to be proven at trial;

3) The Appellees did not meet their burden of proof of establishing that there were no genuinely disputed issues of material fact as numerous genuine issues of material fact remain;

---

[16] Appellate courts review district court judgments, not reasons for judgment. *Wooley v. Lucksinger*, 09-0571, p. 77 (La. 4/1/11), 61 So. 3d 507, 572. Nevertheless, an appellate court "may review the trial court's reasons for judgment to 'gain insight' into the trial court's judgment." *Id.*, 09-0571, p. 78, 61 So. 3d at 572.

**Summary Judgment Standard**

An appellate court applies a *de novo* standard of review to a district court's decision to grant a motion for summary judgment. *Guilbeaux v. Lupo Enterprises, L.L.C.*, 21-0053, p. 4 (La. App. 4 Cir. 5/19/21), 321 So. 3d 447, 451. This Court further explained the *de novo* standard as follows:

> This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute.

*Id.*, 21-0053, pp. 4-5 (La. App. 4 Cir. 5/19/21), 321 So. 3d 447, 451-52 (quoting *Chatelain v. Fluor Daniel Const. Co.*, 14-1312, p. 3 (La. App. 4 Cir. 11/10/15), 179 So.3d 791, 793).

**Discovery**

The Appellants assert that the district court abused its discretion when it failed to allow adequate time for discovery, denied their motion to continue and prematurely granted the Appellees' motion for summary judgment. They allege that these failures resulted in due process violations. They aver that further discovery was required before the district court ruled on the Appellees' motion for summary judgment because they "were not afforded adequate and reasonable time to conduct limited and relevant discovery" despite making repeated requests. They contend that the parties were not ready for trial and they informed the

Appellees that further discovery was needed, including the taking of the depositions of Special Master Valteau and Ms. Downing. Moreover, they alleged the Appellees refused to produce a copy of the 7,702 POC forms.

The Appellants assert they did not have a reason to take any depositions of Ms. Downing, Special Master Valteau or Mr. Thorns, review the POC forms, and/or review the appraisals of the Appellees' properties until the Appellees' filed their motion for summary judgment and the Appellants were properly served therewith. Moreover, they assert that the work performed by Special Master Valteau was solely performed to effect class wide settlement with HANO's insurers. The Appellants maintain they were not parties to that process and were not noticed of his reports, methodology, conclusions, and allocations.

Lastly, the Appellants aver that they were not served with the motion for summary judgment and the memorandum in support of the motion until October 13, 2021. By that time, each of the Appellants had filed a motion to continue the hearing on the Appellees' motion for summary judgment, which was initially set for November 2, 2021. They argue that failing to allow adequate discovery, even in a limited capacity, was extremely prejudicial to the defense of the Appellants.

The Appellees respond that the Appellants' assertion that they were unduly deprived of pre-hearing discovery is meritless. Recognizing that as movers on motion for summary judgment that they bore the burden of proof, the Appellees contend that the Appellants were nevertheless tasked with availing themselves of the documents available to them as well as taking the initiative to oppose the motion for summary judgment. They maintain that seven months passed from May 2021 to December 2021, with the Appellants failing to notice any depositions, or

make requests or propose dates for the depositions of Special Master Valteau and Ms. Downing.

Additionally, the Appellees assert that as to service of the motion for summary judgment, the Appellants were served via U.S. Mail and e-mail on April 9, 2021, as stated in their Certificate of Service. The Appellees certified that the motion was served upon the Appellants "either by hand, by telefax, by electronic mail, or by placing the same [motion] in the United States mail" on April 9, 2021.

They further aver the Appellants took no action to effectively prepare themselves to oppose the motion and specifically failed by: not noticing or providing dates for Special Master Valteau's or Ms. Downing's depositions; neglecting to research the record at the Clerk's office to ascertain that the district court's March 5, 2015 order that the Appellees' Exhibit 3G was to be placed under seal, was in fact a list of Potential Class members that was already contained in an electronic database created in 2011; not paying for their copy of the electronic claims database pursuant to the district court's March 24, 2011 judgment,[17] which

---

[17] In the March 24, 2011 judgment, the district court, Judge Paulette Irons of Division "M" presiding, selected a claims administrator to design a database and creating a claim form database. The judgment set forth that the cost of these services is $174,800, of which the Appellants were each ordered to pay $24, 232.34 to have "All Defendant claims" entered in to the database. The judgment further provided that any party who failed to pay their *pro rata* share of the database costs would not receive an electronic copy of the claimant database:

> Upon completion of the custom database design and data entry, and receipt of payment from the parties as set forth below, the Claims Administrator is hereby directed to forward a copy of the electronic claimant database to both Suzette Bagneris, Class Counsel, and Mary Johnson, Counsel for National Union, who will distribute same to defense counsel as soon as each defendant has fully funded its share of these costs. . . . . **Any party which has not paid its respective share of the Claims Administrator costs shall not be provided the electronic claimant database by the Claims Administrator or any other party.** [Emphasis added].

This judgment was admitted into evidence at the motion for summary judgment hearing as Exhibit F for the Appellees.

would have provided them with the POC forms for all claimants with the supporting documents for each claim; and neglecting to hire Mr. Thorns to perform work in support of the affidavit he executed in support of the Appellant's opposition to the motion for summary judgment. We agree.

This Court has explained that an abuse of discretion standard of review applies when a district court decides whether to delay hearing on a motion for summary judgment when discovery is alleged to be incomplete. We further set forth four factors to be applied when determining whether to grant a continuance and delay the hearing of a motion for summary judgment:

> When discovery is alleged to be incomplete, a trial court has the discretion either to hear the summary judgment motion or to grant a continuance to allow further discovery. *Simoneaux v. E.I. du Pont de Nemours and Co.*, 483 So.2d 908, 912 (La. 1986); *Eason v. Finch*, 32,157, p. 7 (La.App. 2 Cir. 8/18/99), 738 So.2d 1205, 1210. In this procedural context, a trial court's choice to hear a motion for summary judgment or to grant a continuance is reviewed under an abuse of discretion standard. *Rivarde v. City of New Orleans*, 15-0655, p. 5 (La.App. 4 Cir. 3/9/16), 190 So.3d 400, 403, writ denied, 16-0670 (La. 5/27/16), 192 So.3d 744.

> Construing Article 966, this court has held that "[a]lthough the language of article 966 does not grant a party the absolute right to delay a decision on a motion for summary judgment until all discovery is complete, the law does require that the parties be given a fair opportunity to present their case." *Leake & Andersson, LLP v. SIA Ins. Co. (Risk Retention Grp.), Ltd.,* 03-1600, pp. 3-4 (La.App. 4 Cir. 3/3/04), 868 So.2d 967, 969. Similarly, the Louisiana Supreme Court, construing that Article 966, has held that "[u]nless plaintiff shows a probable injustice a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact." *Simoneaux*, 483 So.2d at 913.

> Addressing an adequate discovery claim, the jurisprudence has identified the following four relevant factors for the court to consider:

> (i) whether the party was ready to go to trial,
> (ii) whether the party indicated what additional
> discovery was needed,
> (iii) whether the party took any steps to conduct
> additional discovery during the period between the filing
> of the motion and the hearing on it, and
> (iv) whether the discovery issue was raised in the trial
> court before the entry of the summary judgment.

*Roadrunner Transportation Sys. v. Brown*, 17-0040, pp. 11-12 (La. App. 4 Cir. 5/10/17), 219 So. 3d 1265, 1272-73.

In the instant matter, the Appellants assert they were unprepared to proceed with trial because they were unable to depose Special Master Valteau and Ms. Downing, and they were unable to review the POCs and underlying documents upon which Ms. Downing and Special Master Valteau relied. The Appellants did make known to the Appellees and the district court that they needed further discovery prior to the motion for summary judgment being granted by the district court. However, the record does not reflect that the Appellants set dates for deposing Special Master Valteau and Ms. Downing nor asked their availability for the same prior to the hearing on the motion for continuance. Additionally, there is no evidence in the record of the Appellants complying with the district court's order and paying the costs associated with the compilation and creation of the claims database so that they could receive their electronic copy of the POC forms and associated documents of the claimants. Thus, the application of the factors in this matter militates toward finding that the district court did not err in holding that no further discovery was required.

We find that the district court did not abuse its discretion in determining that further discovery in this matter, a case that has been pending for three decades, was unwarranted. Aside from seeking a continuance and emailing counsel for the

Appellees, the record does not reflect that the Appellants availed themselves of the procedures available to them under the Louisiana Code of Civil Procedure to depose Special Master Valteau and Ms. Downing. Furthermore, we agree with the Appellees that the Appellants had access to the POC forms and the claimants underlying documentation since the March 24, 2011 judgment was rendered. The March 24, 2011 district judgment prohibited the Appellees from producing an electronic copy of the database to the Appellants because the Appellants were ordered to pay their share for the creation of the claims database in order to receive their copy. Therefore, we find that this assignment of error is without merit.

**Propriety of Summary Judgment Procedure and Denial of Due Process**

The Appellants contend that summary judgment is procedurally improper here and the Appellees are not entitled to judgment as a matter of law because emotional distress damages cannot be determined on summary judgment. They aver that in order for a district court to make an award for emotional distress each plaintiff's credibility must be assessed, which should be done at a trial on the merits. The Appellants rely on cases such as *Thompson v. Cenac Towing Co.,* 19-1185 (La. App. 1 Cir. 3/25/21) 322 So. 3d 852, [holding in a Jones Act case that a district court erred in granting summary judgment that dismissing the plaintiff's emotional distress claims because the plaintiff's credibility should have been assessed at trial] and *Bonnette v. Conoco, Inc.*, 01-2767, pp. 24-25 (La. 1/28/03), 837 So. 2d 1219, 1235, [holding in an asbestos case, that in order for plaintiffs to recover emotional distress damages in the absence of a manifest physical injury, they must prove their claim is not spurious by showing a particular likelihood of genuine and serious mental distress arising from special circumstances].

20

They contend that the use of summary judgment procedure in this manner deprives them of their fundamental due process rights of confrontation regarding each class members' claims of individual causation and damages because they were unable to depose or otherwise conduct discovery to ascertain whether each claimant is entitled to compensable damages. The district court, the Appellants assert, must conduct further trial flights of individual causation and individual damages until either all class members' claims have been tried to verdict, or the parties agree to settle.

The Appellants further maintain that use of summary judgment procedure to resolve class wide claims is precluded by La. Code Civ. Proc. art. 592 (E)(5), entitled *Certification procedure; notice; judgment; orders*, which provides:

> Dealing with similar procedural matters, including but not limited to case management orders providing for consolidation, duties of counsel, the extent and the scheduling of and the delays for pre-certification and post-certification discovery, and other matters which affect the general order of proceedings; however, the court shall not order the class-wide trial of issues dependent for their resolution on proof individual to a member of the class, including but not limited to the causation of the member's injuries, the amount of the member's special or general damages, the individual knowledge or reliance of the member, or the applicability to the member of individual claims or defenses.

In response, the Appellees assert that the precedent of the Louisiana Supreme Court as well as the precedent of this Court supports the method they employed to resolve the damage claims of the remaining class members. Specifically, the Appellees rely upon *Watters v. Dep't of Soc. Servs.*, 11-1174, p. (La. App. 4 Cir. 3/14/12), 102 So. 3d 118, and *Oubre v. La. Citizens Fair Plan*, 11-0097 (La. 12/16/11), 79 So. 3d 987.

21

In *Oubre v. La. Citizens Fair Plan*, 11-0097 (La. 12/16/11), 79 So. 3d 987, the Louisiana Supreme Court reviewed an appellate court's reversal of a district court judgment granting a motion for summary judgment in favor of 18,573 claimants, who sued their insurance company for failing to timely institute loss adjustment following Hurricanes Katrina and Rita. *Id.*, 11-0097, pp. 1-2, 79 So. 3d at 990. The district court awarded the claimants $5,000 each, totaling $92,865,000, as a statutory remedy due to them, but did not make a determination as to whether the insurer acted in bad faith. *Id.* The appellate court found that factual determination of whether the insurer breached its duty of good faith was required before penalties could be assessed; thus, it reversed the judgment of the district court. *Id.* The Supreme Court, however, reinstituted the judgment of the district court. The issue of whether summary judgment was an impermissible procedural vehicle to resolve the damage claim of the class was never raised. Indeed, the Supreme Court approved the award of statutory damages to the 18,573 claimants via summary judgment. *Id.*, 11-0097, p. 27, 79 So. 3d at 1006.

*Watters v. Dep't of Soc. Servs.*, 11-1174 (La. App. 4 Cir. 3/14/12), 102 So. 3d 118, involved a class action brought by State employees, working in the Plaza Tower office building in New Orleans, who claimed exposure to toxic mold. An initial trial of the class representatives was held, where the district court rendered judgment in favor of the claimants on common issues affecting the class and awarded the class representatives $25,000 in general damages for pain and suffering, and $10,000 for mental anguish and emotional distress. *Id.*, 11-1174, p. 2, 102 So. 3d at 122.

Although the defendant, the State of Louisiana, initially insisted that each individual class member establish "at trial that he or she suffered harm because of

22

the exposure to mold," the parties subsequently decided to try the claims in flights because it would be burdensome to hold 600 individual trials for the remaining claimants. *Id.*, 11-1174, p. 2, 102 So. 3d at 122. A bench trial was then held for the first flight of 50 class members, which concluded with the district court awarding $25,000 for general damages, and $10,000 for mental anguish to all the claimants, in accordance with the damages awarded at the initial trial. *Id.*, 11-1174, p. 3, 102 So. 3d at 123.

The State appealed the judgment raising several issues, including that each plaintiff should have been medically examined before damages were awarded, and the district court erred by applying a mathematical formula to determine the claimants' awards. *Id.* The State argued that each claimant should have been required to provide medical evidence to prove their claims. The *Watters* Court determined these arguments were erroneous, reasoning that "[t]he State's assertion seeks to deter from the purpose and intentions of class actions. Class actions are utilized to provide cost-effective and expedited litigation for all of the parties involved." *Id.*, 11-1174, p. 8, 102 So. 3d at 126 (internal citation omitted).

Moreover, the State asserted that the district court erred by applying a mathematical formula to determine the claimants' damage awards. The *Watters* Court further rejected this argument, reasoning that in addition to awarding damages based on the totality of the circumstances of each class member, the district court followed award guidelines that had previously been established this Court in an earlier appeal of the same case. *Id.*, 11-1174, p. 20, 102 So. 3d at 132.

In light of the foregoing jurisprudence and unique facts of this case, we find that the use of summary judgment was procedurally proper to resolve the claims of the remaining class members where liability of the Appellants had previously been

determined as well as the damages due for emotional distress damages and diminution of property value. Although the damages in *Oubre* were statutorily determined, it is clear that procedurally there was no issue with resolving the pending claims of the class via a motion for summary judgment. Moreover, *Watters'* holding evidences that it is proper for the district court to apply award guidelines established in earlier flights of the same class action.

In the matter *sub judice*, award guidelines were set forth in the 2006 and 2013 holdings of the district court, as modified by this Court, as to what claims are compensable and on what basis. Special Master Valteau, with the assistance of the CADA and Mr. Thorns, applied those guidelines to determine which claimants were entitled to settlement proceeds from HANO's insurers and how much they were to receive. The same parameters employed by Special Master Valteau are applicable here against the Appellants, which includes HANO itself. The district court's application of the aforementioned award guidelines in this matter resulted in particularized damage awards. This is because once a determination was made as to whether each claimant was entitled to emotional distress and/or diminution of property damages, their claim was ascribed to the appropriate category and/or subcategory for compensable damages, based upon the information contained in his or her notarized POCs and supporting documents.

Lastly, we find that *res judicata* applies here. "*Res judicata* precludes re-litigation of claims and issues arising out of the same factual circumstances when there is a valid final judgment; moreover, it promotes judicial efficiency and final resolution of disputes." *Johnson*, 14-0277, pp. 9-10, 219 So.3d 462-63. The following three factors set forth in Louisiana Rev. Stat. 13:4231 must be met for this doctrine to apply:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The *Johnson* Court further noted that in the context of a class action, "[a] definitive judgment on the merits rendered in a class action concludes all members of the class, whether joined in the action or not, if the members who were joined as parties fairly insured adequate representation of all members of the class." *Id.* (quoting La. Code Civ. Proc. art. 597). "The purpose and intent of class action procedure is to adjudicate and obtain *res judicata* effect on all common issues applicable not only to the representatives who bring the action, but to all others who are 'similarly situated' . . . . ." *Ford v. Murphy Oil U.S.A., Inc.*, 96-2913, p. 4 (La. 9/9/97), 703 So. 2d 542, 544.

In *Johnson*, this Court held that the three statutory *res judicata* requirements were met in applying the district court's 2006 trial determinations of liability and methods of awarding emotional distress damages to the plaintiffs in the flight one trial. Thus, this Court rejected the Appellants' argument that the district court erred in applying a formula for awarding emotional distress damages. *Johnson,* 14-0277,

p. 10, 219 So. 3d at 463. Moreover, this Court upheld the district court's determination that it was reasonable to award emotional distress damages to the flight one plaintiffs based upon the length of time he or she lived or worked on the ASL site prior to the year 2001, considering these claimants were exposed to hazardous and toxic materials on a daily basis. *Id.*, 14-0277, p. 18, 219 So. 3d at 468. This Court reasoned that "the amounts awarded coincided with the methods previously established and upheld." *Id.*, 14-0277, p. 20, 219 So. 3d at 468-69.

In the instant matter, this Court similarly finds that *res judicata* applies. The parameters for awarding emotional distress and diminution of property value damages set forth by the district court in 2006 and 2013 were properly applied in granting the Appellees' motion for summary judgement to resolve the remaining claims of the Appellees.

Finally, we do not find that the Appellants were denied due process in this matter because, as discussed above, they had access to the notarized POC forms and supporting documentation for each claimant, pursuant to the March 24, 2011 judgment. Therefore, the Appellants had the opportunity to determine whether to challenge the recovery of any claimant they deemed ineligible; nevertheless, the Appellants seemingly failed to comply with said order to access these documents.[18]

**Genuine Issues of Material Fact**

The Appellants assert that in order for the Appellees to prevail on a motion for summary judgment for the 5002 class members, the Appellees had to establish that

---

[18] As the Appellees note, in *Oubre*, *supra*, the same due process argument raised by the Appellants currently was raised by the defendant insurers in a writ taken to the United States Supreme Court. *Louisiana Citizens Prop. Ins. Corp. v. Oubre, et al*, 2012 WL 1374528 (U.S. 4/18/12). The insurers asserted that every class action claimant is required to establish each element of his or her claim and the defendant should receive a full and fair opportunity to mount a defense. The Supreme Court denied writs and rejected this argument. *Louisiana Citizens Prop. Ins. Corp. v. Oubre*, 561 U.S. 935, 133 S. Ct. 30 (2012).

there were no genuinely disputed material facts and that the class members are entitled to judgment as a matter of law, for each element of the *prima facie* case as to each class member. They aver that numerous genuine issues of material fact exist which precluded the grant of summary judgment:

- Whether each claimant satisfies the class definition. The Appellants dispute that the eligibility of each claimant was established. They point to the fact that Special Master Valteau disqualified a third of the POCs, but they will not know how many other claimants would have been disqualified if HANO had the opportunity for discovery and cross-examination.

- Whether all the claimants seeking emotional distress damages during the applicable time period resided with the ASL boundaries or in the Adjacent Area. They claim the Appellees again failed to produce the records Special Master Valteau relied upon for residency.

- Whether all the claimants seeking emotional distress damages for being employed on the ASL during the applicable time period was established because there were no pay stubs, employer confirmations or records, or W-2 forms introduced in support of the Motion for Summary Judgment. Any such records produced to Special Master Valteau have been kept under seal and not provided to HANO;

- Disputed genuine issues of material fact as to whether the Special Master's methodologies, processes, and procedures met *Daubert* standards or the standards of its progeny because the Appellants were not permitted to take the deposition of Special Master Valteau;

- Present property ownership, property condition and property values for the claimants who were homeowners on the ASL site or Adjacent Area are unknown? Assert that the record reflects that several properties within the class boundaries were sold after the 2013 insurance settlement with HANO's insurers.

- The present fair market value of the affected properties were not established because the Appellees did not submit current appraisals and new expert opinions on whether the values of the affected

properties have decreased value in comparison to similar properties outside of the class boundaries.

- The application of 2013 and 2014 appraisals to award the Appellees' present property damages raises genuine issues of material fact because those values do not reflect present day value nor their stigma value. The Appellees should have presented current appraisals as they did for the 2013 trial. The district court erred in applying the 2013 judgment of the district court regarding diminution of property value because in the 2013 trial the district court changed several damage awards from the 2005 trial levels after considering expert testimony. The stigmas values from the 2005 trial were reduced from 100% to 20% for those who lived on the ASL whereas there was a reduction to 10% for those who lived adjacent to the site while using post-Katrina property values. Moreover, Mr. Thorns 2019 affidavit does not details the date he performed appraisals of the properties on the list he received from Special Master Valteau, and Special Master Valteau's affidavit does not state the dates those appraisals were completed.

- The second affidavit of Mr. Thorns, executed on October 20, 2021, and submitted by the Appellants in opposition to the motion for summary judgment creates a genuine issue of material fact as to whether his prior appraisals are currently valid to determine property value and environmental stigma impact. He attested to the appraisals only being valid for one year pursuant to the Uniform Standards of Professional Appraisal Practice, and that he has not been requested to re-appraise the 261 properties.

- The affidavits of Mr. Thorns and Special Master Valteau raise genuine issues of material fact. The district court in the 2013 trials based its awards of 20% and 10% stigma on the appraisals performed in the same year, 2013 and the testimony of two appraisers, including Mr. Thorns. However, Special Master Valteau's affidavit states that he calculated present day value as of March 13, 2013, which was the date when the trial for the first flight of plaintiffs began, in order to provide uniformity in valuation of the properties. The Appellants assert that Special Master Valteau did not establish that his use of 2013 appraisal awards or stigma values can be used instead

of current day appraisals and how this may affect stigma, if any exists.

- Genuine issues of material fact exist as to whether the Special Master's affidavit should have been stricken from the record or if he should have been recused for the appearance of impropriety in engaging in *ex parte* communications with counsel for the Appellees, filing an affidavit on the Appellees' behalf and failing to provide proper notice to the Appellants under La. Rev. Stat. 13:4165(C). Special Master Valteau did not disclose that he was communicating with counsel for the Appellees which gives the appearance of impropriety. It was also improper for his to request payment for this additional work from Appellees.

- Special Master Valteau did not indicate that he served or noticed the Appellants with his: 1) Report and Recommendation of Allocation Model Regarding the Agriculture Street Landfill Class Fund- November 20, 2014; 2) Motion to Approve Special Master's Statement of Allocation and Notice of Rights- January 27, 2015; 3) Motion to File Final Allocation Ledger- February 6, 2015; 4) Motion for the Introduction of the Special Master's affidavit of Methodology, Application and Conclusion- February 10, 2015; and 5) Motion to Include Special Master Recommendations and Judge's Approval of Same in Final Distribution List and to File the List Under Seal- May 28, 2015. The Appellants further aver that the Special Master's Recommendations, Final distribution and Order filed on October 11, 2019 were never shared or served on the Appellants; thus, they could not have filed an opposition or response within 10 days under La. Rev. Stat. 13:4165(C)(3).

**Discovery**

We note that the first four aforementioned issues are based upon the Appellants assertion that they were unable to conduct further discovery, such as deposing Special Master Valteau and were denied access to documents supporting the Appellees' claims. Having already discussed that the district court did not err

in allowing further discovery, we pretermit discussion of these alleged genuine issues of material fact.

**Current Property Ownership**

The Appellants assert that several properties in the class boundaries and/or Adjacent Area were sold after the settlement with HANO's insurers and that the condition of affected properties is unknown, which should preclude the granting of summary judgment. The issues of current ownership and property conditions do not create genuine issues of material fact so as to preclude the grant of summary judgment where claimants have been determined to fit within the class definition as well as the award categories and subcategories as previously discussed. As Special Master Valteau attested to in his affidavit, the class definition stated that a claimant must have owned property for one full year prior to February 1, 1994, or by January 31, 1993. Thus, the issue of whether a claimant *presently* owns property in the affected area is irrelevant and insufficient to create a genuine issue of material fact.

**Fair Market Value and the 2021 Affidavit of Mr. Thorns**

The Appellants raise several issues about the fair market values of the affected properties not being established and that application of 2013 and 2014 appraisals to award the Appellees' present property damages raises genuine issues of material fact because those values do not reflect present day value nor their stigma value. However, the Appellants fail to present any legal authority for the proposition that the district court or this Court is required to impose present day fair market values of the ASL and Adjacent Area properties.

Where there is a legal right to recovery of damages but the amount cannot be exactly determined, district courts have reasonable discretion to assess damages

based upon all the facts and circumstances of the particular case. *Fortson v. Louisiana Power & Light Co.*, 509 So.2d 743, 745 (La.App. 3 Cir.1987). Damage awards will only be disturbed when the district court has clearly abused that discretion. La. Civ. Code art. 2324.1; *Williams v. City of Baton Rouge*, 98-1981, 98-2024, pp. 11-12 (La. 4/13/99), 731 So.2d 240, 249. "Reasonable persons frequently disagree about the measure of general damages in a particular case." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993). "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Id.*

Moreover, *res judicata* applies, as discussed above, to the district court's award of damages to the Appellees. We further note that the Appellants did not submit any evidence of how current fair market values for the affected properties differed from the 2013 appraisals. Mr. Thorns' second affidavit executed in 2021, does not include any information on the current fair market value of the affected properties that would demonstrate that the values are no longer the same as when he performed the 2013 appraisals.

Additionally, the Appellants aver that Mr. Thorns' 2021 affidavit creates a genuine issue of material fact because he essentially recants his previous affidavit and attests that his 2013 appraisals are currently invalid. The Appellants assert that Mr. Thorns' conflicting affidavits create a genuine issue of material fact as to whether the 2013 appraisals should have been relied upon by the district court in granting the Appellees' motion for summary judgment.

While portions of Mr. Thorns' affidavits conflict, they do not evidence that a genuine issue of material fact exists as to whether the district court applied the correct values in the instant matter where the court applied values that have already been jurisprudentially approved, have *res judicata* effect and the district court had vast discretion to determine the amount of awards.

Moreover, "[a]n inconsistent affidavit offered only after the motion for summary judgment was filed is not sufficient to create a genuine issue of material fact where no justification for the inconsistency is offered." *George v. Dover Elevator Co.*, 02-0821, p. 4 (La. App. 4 Cir. 9/25/02), 828 So. 2d 1194, 1197. "This is to prevent the too easy thwarting of summary judgment procedure by the mere filing of an affidavit contradicting inconvenient statements found in previous deposition testimony when the mover has no opportunity to cross-examine the witness concerning the inconsistencies and the trial court is prevented from weighing evidence by the rules of summary judgment." *Id.* As the *George* Court noted, we recognize that Mr. Thorns' latter affidavit of October 2021 was executed after the Appellees' motion for summary judgment was filed in April of the same year, which indicates that the Appellees had this affidavit prepared to thwart the Appellees' motion for summary judgment.

**Special Master Valteau**

The Appellants remaining alleged genuine issues of material fact pertain to Special Master Valteau and his conduct in confecting an affidavit on the Appellees' behalf and at their request. They contend that genuine issues of material fact exist as to whether Special Master Valteau's affidavit should have been stricken from the record or if he should have been recused for: the appearance of impropriety in engaging in *ex parte* communications with counsel for the

Appellees; filing an affidavit on the Appellees' behalf; and, failing to provide proper notice to the Appellants under La. Rev. Stat. 13:4165(C).

At the hearing held on the Appellants' motions to strike, Special Master Valteau and counsel for the Appellees' argued that his affidavit simply served to recount for the district court what had transpired during prior trials and during his service as Special Master. This is because the currently presiding judge was not the same judge who presided over the prior trials nor was she the judge who appointed him to serve as Special Master.

We find that the district court did not abuse its discretion in declining to disqualify Special Master Valteau and in considering the affidavit in support of the Appellee's Motion for summary judgement. Further, the district court's acceptance of and reliance upon the affidavit does not create a genuine issue of material fact in this matter such that summary judgment would not be warranted.

Lastly, the Appellants' assertion that the Special Master's reports and other filings were not served upon them dating back to 2014 is not an issue that, if true, would preclude the granting of the motion for summary judgment. The record in this matter begins with motions filed in October 2019. It does not include the disputed filings of Special Master Valteau in 2014. Moreover, this is an issue that should have been raised approximately a decade ago, at least by the time the district court adopted the Special Master's report and approved the settlement with HANO's insurers, of which each of the Appellants were aware. Finally, although the Appellants aver that Special Master Valteau's affidavit does not comply with La. Rev. Stat. 13:4165, said statute is applicable to reports of Special Masters, not affidavits.

**DECREE**

For the foregoing reasons and pursuant to our *de novo* review, we affirm the June 10, 2022 judgment of the district court, granting the motion for summary judgment in favor of the Appellees and awarding damages for emotional distress and diminution of property value in the amount of $75,323,455.71, against the Appellants.

**AFFIRMED**